MARIA DEWEY v. M. L. KIMBALL and Others.[1]

June 5, 1903.

Nos. 13,405, 13,408—(91, 92).

### Registering Title—Torrens System—Parties.

When proceeding under the Torrens act (Laws 1901, p. 348, c. 237), the applicant cannot, in taking the steps provided for in Laws 1901, p. 353, §§ 18, 19 (c. 237), ignore and disregard the report and advice of the examiner as to what parties or persons should be made defendants. .

### Construction of Act—Parties Defendant.

The provision in Laws 1901, c. 237, § 19, in respect to who shall be, and shall be known as, defendants, is mandatory; and a failure to follow the advice and report of the examiner amounts to a failure to observe this provision, and renders any judgment thereafter entered in the proceeding invalid and void for want of jurisdiction over the person or party named by the examiner.

### Same.

It is not the duty of the court, when making an order for the issuance of a summons under Laws 1901, c. 237, § 18, to investigate and to name defendants, or to prescribe who shall be named as defendants.

On Reargument.

October 16, 1903.

### Publication of Summons.

In publishing the summons provided for in Laws 1901, p. 348 (c. 237), known as the "Torrens Law," it is not necessary to follow the provision of G. S. 1894, § 5204. A compliance with the provisions of section 20, page 353, is all that is required.

### Parties Defendant.

Where the examiner suggests that a certain party named by him be made a defendant, but the suggestion is not observed, and, on the contrary, is entirely ignored, the judgment thereupon entered is invalid and void as against such party and as against all persons, natural or artificial, in privity with such party, not made defendants in the proceeding.

[1] Reported in 95 N. W. 317, 895; 96 N. W. 704.

Application by Maria Dewey in the district court for St. Louis county to have the title to certain land registered. From a judgment and decree, Ensign, J., directing the registration of said land, free of encumbrance, in the name of applicant; and from an order, Cant, J., denying a motion to vacate said decree and for leave to answer, National Bond & Security Company appealed. Judgment vacated, and case remanded: order affirmed pro forma.

*William G. White,* for appellant.

*Coryate S. Wilson* and *Davis, Hollister & Wilson,* for respondent.

COLLINS, J.

This proceeding was under the provisions of Laws 1901, p. 348 (c. 237) (the Torrens law), and there are two appeals—one from the decree of confirmation of title and registration, under section 27, and the other from an order denying a motion of the National Bond & Security Company (hereinafter designated as the "Bond Company") to vacate and set aside this decree, and for leave to file a duly-verified answer in response to a summons published in the proceeding, in which summons Maria Dewey was named as plaintiff, and "M. L. Kimball and all other persons or parties unknown, claiming any right, title, estate, lien, or interest in the real estate described in the application herein," which was a single lot in the city of Duluth, St. Louis county, were designated as defendants. The motion was made more than sixty days after the entry of the judgment or decree, but the appeal therefrom was, of course, taken within the statutory period of six months.

Although we shall dispose of the appeal from the judgment by considering but one of the many assignments of error made by counsel for the bond company, we do not wish to be understood as regarding all of the others as having no merit. We express no opinion upon them, for it is not necessary.

Stated in chronological order, the facts are that the bond company and another corporation, the National Investment Company (hereinafter styled the "Investment Company") were and are domestic corporations having offices in the city of St. Paul. We do not regard it as material that at the time of these various

proceedings the same person was the secretary of each corporation, but such was the fact. It appears that taxes for the year 1893 became delinquent upon the lot in question, and at the tax sale in the year 1895 it was bid in by the state. September 17, 1895, the investment company paid the full amount of these taxes into the county treasury, and thereupon received a state assignment certificate in the usual form. January 15, 1896, this company paid taxes upon the lot for the year 1894, then delinquent, and received what is known as a "subsequent tax receipt." March 2, 1897, it assigned the state tax certificate and the subsequent tax receipt to the bond company, which company at all times since that day has been the owner, holder, and possessor thereof. The taxes for the years 1896, 1897, and 1898 also became delinquent, and were paid by the bond company, which in each instance received a subsequent tax receipt.

March 6, 1901, Maria Dewey, claiming to be the owner in fee of the lot, instituted an action in the district court against the investment company and one Emma Hicks to determine adverse claims or liens of said defendants, and each of them, and to quiet her title to the lot. Personal service of the summons in this action was made upon the secretary of the investment company at the city of St. Paul, but that company made no answer to the complaint, and thereafter judgment was duly entered in favor of the plaintiff and against each of the defendants, in strict accordance with the demand for judgment found in the complaint. This judgment was made and entered by the clerk of court, and was duly recorded March 30, 1901, in the register's office. It is to be observed here that no other defendants were named in that action, and that no attempt was made therein to determine the claims of unknown parties, as might have been done under the provisions of G. S. 1894, § 5818.

February 8, 1902, a few days before this action was instituted, there was presented to the county auditor the tax certificate issued, as before stated, to the investment company; and he was requested to prepare, under his hand and official seal, a notice to redeem, directed and addressed to the person in whose name the tract of land was assessed, in the manner and as provided for in

G. S. 1894, § 1654. It was asserted in the answer proposed by the bond company that this request was in writing, in which it was stated that the bond company was the holder of said tax certificate, and of all of the receipts for subsequent taxes paid by it and by the investment company. The county auditor issued a notice of expiration of the redemption period, properly addressed to Henry Nolte, and it appears that on March 22, 1902, this notice was duly served upon Nolte, the person named therein, in the county in which the property was situated; the sheriff certifying in his return that the notice was delivered to him by the investment company on March 10 of the same year. It may be observed, in passing, that there is no statute which requires the sheriff to state in his return by whom the notice has been delivered to him, so that this recital bound no one, and, further, that the proofs made at the hearing of the motion clearly show that the notice was not delivered to the sheriff by the investment company, but by the bond company.

The sheriff's return was duly made to the county auditor, as provided by law, before Maria Dewey filed her application under the Torrens act, which was on March 31, 1902. In the application she stated that the premises were then occupied by herself, and that the only person who had any claim, lien, or interest therein was M. L. Kimball, of West Superior, Douglas county, state of Wisconsin. It also appeared from this application that said Kimball, who held a sheriff's certificate of foreclosure of a mortgage upon this lot, assented in writing to the registration as prayed for by the applicant, and also, in writing, waived the service of a summons or other notice in the matter. On the same day an abstract of title of the lot was also filed with the clerk as required by the act, and attached to this abstract was the following certificate of the county auditor:

"Lot 2, sold May 6, 1895, for taxes of 1893; assigned September 17, 1895, to the National Investment Company, St. P. Taxes of 1896, '97 and '98 paid as subsequent tax to judgment of 1893. Notice given and redemption period will expire May 27, 1902."

This application was, by order of the court, duly referred to the

examiner of titles of St. Louis county, under Laws 1901, p. 352, §
17 (c. 237); and after due investigation the examiner filed a report,
including therewith a certificate of his opinion upon the title.
He stated and certified, among other things, that an action had
been brought by the applicant in March, 1901, against the invest-
ment company and Emma Hicks, to determine all adverse claims
to the lot; that personal service of summons had been made,
and that each and both of the defendants defaulted; that judg-
ment against each had been duly entered, adjudging the title in
fee to be in Maria Dewey, the applicant; and that all claims or
liens of the defendants, or either of them, upon the lot, were
adjudged null and void. He also stated and certified the facts
found in the records of the county auditor's office respecting the
sale of the lot for taxes in 1895, that an assignment had been
made by the state to the investment company, and also that subse-
quent delinquent taxes had been paid into the county treasury,
as before stated. He then stated and certified as follows:

"On the 27th day of February, 1902 (some eleven months after
the rendition and recording of the judgment hereinbefore referred
to), the county auditor, at the request, apparently, of the National
Investment Company, caused a notice of the expiration of redemp-
tion period from said tax sale and assignment for taxes of 1893,
above referred to, to be issued, which notice was thereafter duly
served, and proof of service thereof made, and filed in said audit-
or's office March 28, 1902. While I am of the opinion that the judg-
ment in the action to quiet title, adjudging the invalidity of all
claims or liens of the National Investment Company, is binding
and conclusive upon it, it does not bind the assignees, if any, of
said company, who were such prior to the commencement of the
action in which said judgment was rendered. It would certainly
seem from the proceedings had in the auditor's office, as above
indicated, that some person other than said company may have
some rights based upon the aforesaid tax assignment, which were
not cut off by said judgment. I am therefore of the opinion that
parties, if any, claiming under the National Investment Company
prior to the commencement of the action aforesaid, should be
made parties defendant; but as there is nothing of record to indi-
cate who, if any, they are, I would suggest that the National In-
vestment Company and the usual 'unknown parties,' as required
by the statute, should be named and made parties defendant in
this proceeding."

This report was duly filed in accordance with the provisions of Laws 1901, c. 237, § 17. The clerk of the court then gave notice to the applicant of the filing of this report. The latter then elected to proceed further with the application, and the clerk issued a summons, substantially in the form provided for in Laws 1901, c. 237, § 20, in which, as before stated, Maria Dewey was designated as plaintiff, and "M. L. Kimball and all other persons or parties unknown" as defendants. This summons seems to have been based upon an order of the court, in which the recommendation of the examiner of titles was wholly disregarded. The investment company was not named as a defendant, but instead thereof appeared the name of M. L. Kimball. The summons was immediately published in a newspaper of the proper county for the required length of time, and of this due proof was made. No answer being filed or made, the decree registering the land in the name of Maria Dewey was entered by default June 7, 1902, in form strictly complying with the requirements of the law. When publishing this summons, no attempt was made to observe or to follow the provisions of G. S. 1894, § 5204, relating to the service of summons by publication in ordinary cases. No return of "Not found" was made by the sheriff, and no affidavit of any character was filed with the clerk of the court. The summons was simply handed to the printer by the applicant's counsel, and thereafter published in a newspaper, of which proof was duly made, and filed with the affidavit of default or no answer. This statement embraces such facts as have been made prominent on these appeals.

We quite agree with the court below in its remark that the party applying to vacate the decree (the bond company) should have been made a party by name, and would have been if the applicant had used due and proper diligence. It is very evident to us that, had she exercised the slightest degree of care or industry, she would have been informed that the investment company had, some time prior to the bringing of her action to determine adverse claims, parted with the tax certificate theretofore issued to it, and the subsequent receipt, and had no further claim or lien upon the land, and, through proper inquiries of the officers

of such company, would have learned, without difficulty, the name of the owner of the certificate and receipt. Inquiry of the secretary would have brought the information and the name of the assignee. That the investment company had disposed of its claims, and had no further lien or interest, should have been suggested to the applicant by its failure to answer in the action before mentioned, and also by the records in the office of the auditor, wherein it appeared that, some eleven months after the default judgment was entered, some one was asserting a lien upon the premises for the amount paid for taxes (several hundred dollars), and was endeavoring by reason thereof to foreclose the lot owner's right of redemption from the tax sale. This fact alone was sufficient notice to the applicant to put her upon investigation and inquiry, and slight search for the truth would have disclosed the real facts.

Not only was there a failure to make this inquiry, either at the office of the county auditor or at the office of the investment company, but it looks as though there was an effort to avoid it. Counsel for the applicant ignored the recommendation and suggestion found in the examiner's report, and procured a formal order of the court naming the person to be designated as defendant in the summons, in addition to unknown parties—a person who had previously and formally, in writing and upon the application, waived all right to any further notice whatsoever in the proceeding. Although the examiner was of the opinion, and so stated, that the investment company was bound and concluded by the judgment entered in the action against it, he further stated emphatically that an assignee of such company, to whom the assignment had been made prior to the commencement of the action, would not be bound by it, and that the company itself should be named as defendant. Prudence upon the part of the counsel for the applicant, to say nothing of the moral aspect of the case, not only demanded some investigation, but, in addition, that the examiner's report and suggestion be observed. The applicant and her counsel could not close their eyes to the record in the auditor's office, pay no attention to it, or to what might be suggested thereby, and also disregard, ignore, and practically sweep

aside the report and advice of the examiner. If such a course of conduct should be upheld, the Torrens law would prove an instrument of oppression, and its enforcement would result in incalculable injury.

It is the duty of the examiner to inquire into the truth of all matters set forth in the application, to search the records and investigate all the facts brought to his notice, and to file a written report for the advice of the court. While the court is not bound by this report, and may require further and additional proof, it must wholly depend upon the examiner to acquaint it with all important facts bearing upon the title of the applicant. It cannot be within the power of the latter to disregard this report, or to decline naming as defendant any party whom the examiner finds to have such an interest as to require that he shall be so named.

As before stated, counsel for the applicant obtained an order of the court for the issuance of a summons, in which M. L. Kimball was to be named as defendant, but the act does not require that the defendant to be mentioned in the summons shall be named in the order. The provision (Laws 1901, p. 353, c. 237, § 18) is simply that the summons shall be issued by the order of the court, and attested by the clerk. It is no part of the duty of the court, when making this order, to investigate and to name defendants, or to prescribe who shall be named. That feature of the summons is a formal matter to be observed and regulated, when it is issued, by the applicant's attorney, or by the clerk, in whose office all papers are filed. By Laws 1901, c. 237, § 19, it is provided that all persons named in the application, or found by the report of the examiner as being in possession of the premises, or as having of record any lien, incumbrance, right, title, or interest in the land, shall be, and shall be known as, defendants; and, although the examiner gave his opinion that the investment company had no claim or lien upon the land, yet he regarded its apparent connection with the title to be of such importance as to require that it be named as defendant in the summons. He made no recommendation as to Kimball, evidently assuming that his right to future notice of any character had been waived. This report and recommendation, taken as a whole, must be treated as a finding

that the investment company had an interest in or lien upon the real property, under the tax 'certificate, and of such a nature as to require and demand that it be named and made a defendant in all future steps.

We hold that the provision of section 19 in respect to who shall be and shall be known as defendants is mandatory, and that a failure to follow the advice and suggestion of the examiner of titles, as found in his report, amounts to a failure to observe this provision, and renders any judgment thereafter entered invalid and void for want of jurisdiction over the person or party named by the examiner. It is no answer to this to say that the investment company had already had its day in court, and was absolutely concluded by the judgment. That judgment, if properly obtained and entered, was conclusive upon it; but this was a matter to be brought to the attention of the court, and passed upon at the hearing of the application and under a plea of res adjudicata.

It is urged in the brief of counsel for the applicant that the records show that this title was, soon after the entry of the decree, registered in the name of another party, alleged to have been a purchaser of the land for value and in good faith. But no such party could acquire any right as against a person aggrieved by the decree, taking an appeal as prescribed by the act. The decree of registration itself is taken, in accordance with Laws 1901, p. 357, § 30 (c. 237), subject to the right of appeal by any aggrieved party within six months from the entry thereof. While the rights of this alleged good-faith purchaser have not been brought before this court for adjudication, we suggest that the Torrens act expressly fixes and limits these rights, and must govern them. We need not consider the case further.

The judgment is set aside. The order appealed from is affirmed pro forma. Statutory costs will be allowed the appellant, only, and the case is remanded to the court below for further proceedings.

On petition for reargument, the following opinion was filed June 5, 1903:

PER CURIAM.

In the opinion heretofore filed in this cause the fact is made prominent that when publishing the summons no attention was paid to the requirements of G. S. 1894, § 5204, that no return of "Not found" was made by the sheriff, and that no affidavit was filed with the clerk of the court in compliance with the provisions of the above-mentioned section. There was a further expression in the opinion to the effect that this court did not regard assignments of error made by counsel and not considered as being without merit. It was also declared that a failure to follow the advice and suggestion of the examiner of titles renders a judgment thereafter entered invalid and void for want of jurisdiction over the person or party named by the examiner.

Upon the consideration of a petition for a reargument, we deem it advisable to make the decision more specific and definite in respect to the matters above mentioned. It is therefore ordered that a reargument be granted upon two points:

First. Is it necessary to comply with the provisions of section 5204, supra, when publishing the summons in said proceeding, or is the Torrens law sufficiently complied with by causing the summons to be published the required length of time, of which proof shall be made, without any other or further act?

Second. Is the judgment invalid and void as to all parties defendant, or simply invalid and void as against the person or party named by the examiner, and who should have been designated in the summons as defendant?

The reargument is to be upon briefs to be filed on or before the first day of the next general term of this court. Except as to these points, the petition is denied.

On October 16, 1903, the following opinion was filed:

COLLINS, J.

Upon the filing of a petition for reargument in this case it was ordered that counsel be heard upon two points only: First. Is it necessary to follow the provisions of G. S. 1894, § 5204, when publishing the summons provided for in Laws 1901, p. 348, § 20 (c.

237), or is that section sufficiently complied with by causing the summons to be published the required length of time, of which proof shall be made, without any other or further act? Second. Is a judgment entered, as was the one now before us, invalid and void as to all parties defendant, or simply invalid and void as against a person or party named by the examiner, and who should have been designated in the summons as a defendant, but was not?

Upon due examination of the briefs presented by counsel upon these two points, we conclude that it is not necessary to observe the provisions of section 5204, supra. The language found in section 20 in respect to publication is not very definite, but the provision is that the summons shall be served upon nonresident defendants and upon unknown persons or parties defendant by publishing it in a newspaper printed and published in the county wherein the application is filed for the prescribed number of weeks, of which proof must be made. Section 20a makes it the duty of the clerk of the district court to send by mail a copy of this publication to all nonresident defendants whose place of address is known, or stated in the application. There is a provision that other and further notice of the application may be given to defendants in any manner directed by the court. We are of the opinion that these provisions are exclusive, and provide the mode and manner of service upon nonresidents and unknown defendants, and that nothing more can be required of the applicant than a compliance with them. Nor can we now suggest any good reason why this method of service is not as complete, and will not prove as effectual as that provided for in section 5204. This construction of section 20 is in harmony with the understanding and the practice of all attorneys up to the time that doubt was cast upon its correctness by the original opinion in this case. While this fact is not conclusive upon the court, it may well be given some consideration and weight.

Answering the second question, we are of the opinion that a judgment so entered is invalid and void as against the persons or parties named by the examiner, and who should have been designated

in the summons as defendants, but were not, and against all parties who claim under them, or who are in privity with them. The proceeding is one in rem, and the bond company claimed an interest in the land in question under a tax certificate first issued to the investment company, and then assigned to it. In Ware v. Easton, 46 Minn. 180, 48 N. W. 775, an action brought against unknown parties under section 5818, the court restricted the invalidity of the judgment only as against a party not named as defendant, but who, of record, appeared to be the owner of the patent title, and parties claiming under him. The present conclusion is in harmony with that case. In fact, the question now before us has really been answered by this court in Reed v. Siddall, supra, page 417, 95 N. W. 303. It must not be understood that it was the intention of the court to hold to the contrary in the original opinion. The point was not alluded to by counsel nor considered by the court. But that it may not remain in doubt, we now hold that the judgment in question was invalid and void as against the investment company and the bond company, both domestic corporations, and within the jurisdiction of the court. The failure to follow the suggestion and recommendation of the examiner that the investment company be made a party affected the judgment only as to it, and persons, natural or artificial, in privity with it, not made defendants in the proceedings.

Except as it has thus been made more definite, the former opinion is adhered to.