## WILLIAM C. RILEY v. MARY H. PEARSON.[1]

January 3, 1913.

Nos. 17,916—(237).

**Easement.**

A deed of real estate construed, and *held* to convey to the grantee an easement of a passageway over the land of the grantor, and that such easement was permanent, and not limited to the life of the building on the premises.

**Registration of title — failure to disclose persons in interest.**

Where, in proceedings under the Torrens act to register title, the applicant fails to disclose to the court the names of persons known to him to have an interest in or lien upon the property, and such persons are not named as parties to the proceeding or served with summons, and do not have actual notice of the proceeding, a judgment rendered therein is not binding upon such persons.

**Evidence.**

Applicant in the proceedings in question herein *held* to have known before the summons was applied for that her title was subject to permanent easements owned by persons known to her.

**Collateral attack.**

Such judgment, rendered without jurisdiction of the persons owning such easements, was void as to them, and may be attacked collaterally.

William C. Riley made application to the district court for Ramsey county to register title to certain real estate in block 26, St. Paul

1 Reported in 139 N. W. 361.

proper. In his report the examiner of titles mentioned that the westerly 41.06 feet of lot 8 in that block had been registered and that a certificate from the registrar of titles could be filed in the proceeding, so that all matters in relation to easements and rights growing out of agreements might be settled. Mary H. Pearson filed her answer, alleging that she was the owner in fee simple of the westerly 41.06 feet of lot 8 and her title had been duly registered. Daniel Aberle & Sons, a corporation, also answered, claiming a perpetual easement to the use of the arched alleyway in the rear of the building situated on the westerly 41.06 feet of lot 8, and praying that in any decree its rights be recognized and established. The matter was heard before Kelly, J., who made findings and as conclusion of law, among others, found that applicant and Daniel Aberle & Sons were entitled to a perpetual easement to the use of the arched alleyway and the land and space which constituted the arched alleyway in the rear of the store building on the westerly 41.06 feet of lot 8. From an order denying her motion for a new trial, Mary H. Pearson appealed. Affirmed.

*William G. White,* for appellant.
*A. E. Horn,* for respondent Riley.
*Charles Bechhoefer,* for respondent Daniel Aberle & Sons.

BUNN, J.·

This is a proceeding under the so-called Torrens act to register the title to land in the city of St. Paul. A trial of the issues resulted in a decision that the applicant was entitled to have his title to the land, and to the easements referred to in the decision, registered in him. Defendant Mary H. Pearson moved for a new trial, and from an order denying such motion appealed to this court.

The questions presented here relate:. (1) To the character and extent of the easements owned by plaintiff and defendant Daniel Aberle & Sons prior to the decree hereinafter mentioned; (2) to the effect of such decree on such easements. The material facts are as follows:

Alexander Paul, in his lifetime, was the owner of lots 8 and 9,

block 26, St. Paul proper. He constructed upon this property a three-story stone building,. divided into four separate stores. By his will Alexander Paul devised this property to his children, Charles Paul and Mary Paul, in equal shares. The will was probated in 1867, and the final decree, entered in 1881, assigned the property to the devisees named. Lots 8 and 9 have a frontage on East Third street of 116 feet, and a depth on Robert street of 150 feet. The store building covered the entire frontage of both lots on East Third street, but the division into stores was without any reference to lot lines. Store No. 1, located at the northeast corner of East Third and Robert streets, was constructed on the west 41.06 feet of lot 8. Stores numbered 2, 3, and 4 were located on the remainder of lot 8 and all of lot 9.

. In 1881 commissioners appointed by the probate court to partition the estate of Alexander Paul filed their report, in which store No. 1 was assigned in severalty to Charles Paul, and stores Nos. 2, 3, and 4 were assigned in severalty to Mary Paul. In this report, which was confirmed by the court in April, 1881, and duly recorded, store No. 1, together with the land upon which it was located, was set off to Charles Paul, subject to the following easement:

"Subject to the right of use of the arched alleyway through the rear end thereof by the owners and occupants and their heirs and assigns of said stores two, three, and four in said block, for ingress and egress from the same into and from the yard room in the rear of said block, *so long as said building shall stand.*"

The arched alleyway mentioned in the report leads from Robert street to the "yard room" in the rear of stores 2, 3, and 4. Store No. 1 extends the full length of the lot, and this alleyway is a driveway under the second story, with its sides and arched ceiling of stone. It is 10 feet wide on the ground and 16 feet high at the highest point of the arch, and extends the full width of store No. 1 to an open space in the rear of the other stores, which do not extend to the rear of the parcels on which they stand.

Mary Paul died, and her undivided half interest in the property was assigned by the final decree entered January 26, 1888, to the devisees named in her will, Emma and William Paul. On the next day

there was recorded a deed from Charles Paul and wife to Emma Paul and William Paul. This deed, dated in November, 1887, purported to convey to the grantees the three stores which had been set off to Mary Paul in the partition proceedings in 1881. In this deed the easement granted was described as follows:

"Together with the right of use of the arched alleyway in the rear of said most westerly store for ingress and egress to and from the yard room in the rear of the stores standing on said lots eight (8) and nine (9)."

The applicant, William C. Riley, and the defendant Daniel Aberle & Sons, have succeeded to the title and interest of Emma and William Paul in two of the stores and parcels of lots 8 and 9 which went to Mary Paul by the partition, Riley owning parcel No. 4 and Daniel Aberle & Sons parcel No. 3, and they are the present owners of the easements. Defendant Mary H. Pearson succeeded to the title of Charles Paul to parcel No. 1, on which store No. 1 and the arched alleyway stands.

The foregoing are the facts that bear on the question whether the easement of the applicant is permanent, or endures only so long as the building stands. The facts that bear on the second question are as follows:

On April 24, 1906, Mary H. Pearson filed in the district court of Ramsey county her application to register the title to the west 41.06 feet of lots 8 and 9, block 26. After the usual reference to the examiner of titles, the latter, on May 8, 1908, filed his report, in which he reported that the applicant was the owner of record of the land sought to be registered, subject to the easement granted by the deed of November, 1887, from Charles Paul, which easement the examiner stated "does not appear to have ever been extinguished." He recommended that the owners and persons in possession of the remainder of lots 8 and 9, covered by the store building, be made defendants in the proceeding. The applicant did not, however, apply for the issu-

ance of a summons in which these owners and persons in possession were named as defendants. Nothing appears to have been done in the proceedings until October 24, 1906, on which day the examiner filed a supplemental report, in which he stated that the title should be registered subject to the right of use of the arched alleyway by the owners and occupants, their heirs and assigns, of the store building, "so long as said building shall stand," and stated that, if this were done, it would not be necessary to make the owners and persons in possession of the remainder of lots 8 and 9 defendants in the proceeding.

On the day following the filing of this supplemental report, the applicant applied for the issuance of a summons, and did not include among those to be named as defendants the owners of the remainder of lots 8 and 9 and the easement, who were, as before stated, William C. Riley and Daniel Aberle & Sons. Riley was at the time a resident of St. Paul, and Daniel Aberle & Sons was a corporation having its place of business and the residence of its officers in St. Paul. The summons was issued as applied for, and did not name as defendants either Riley or Daniel Aberle & Sons, and neither was ever served or notified of the proceedings. The summons was directed to certain named defendants, and to "all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the application herein." This summons was published as required by law, and the proceedings came on before the court, which made its decision finding that the applicant was the owner of the real estate described in the application, subject to the easement "so long as said store building shall stand," and directing the entry of judgment accordingly. Judgment was entered, which described the easement in the language of the findings, and ordered the register of titles to register applicant's title, subject to such easement and certain other incumbrances named. The title was so registered, and a certificate issued.

On these facts, the learned trial court decided that the applicant in this proceeding and defendant Daniel Aberle & Sons were the owners of a *perpetual* easement for a passageway through the arched

alleyway, and that, not being parties to the Pearson registration proceeding, they were not bound or affected by the judgment in that proceeding, which declared their easement to be only "so long as said store building shall stand."

1. The first claim of appellant is that the easement is not perpetual, but continuous only "so long as the stone building shall stand." If the character of this easement is to be determined by the terms of the partition decree in the estate of Alexander Paul, this is correct; but if the character and duration of the easement is to be determined by the terms of the deed of November, 1887, from Charles Paul to Emma and William Paul, we think it clear that the easement was perpetual. The language will not admit of any other construction. The easement was to each grantee, and *to his "heirs and assigns forever,"* and was without limitation as to time. There is nothing to warrant the conclusion that if the building should be destroyed by fire, or cyclone, or torn down to make way for a new structure, it was intended that the easement should terminate. And we hold that we must determine the nature and duration of the easement from the terms of the deed of November, 1887.

It is urged that this deed was merely confirmatory of the partition decree entered six years before; but there is no suggestion why this decree needed confirmation, and no explanation of why, if it did, Emma and William Paul did not give a deed to Charles confirming his title under the decree to parcel No. 1. Apparently the partition proceedings were entirely effective to convey to Mary Paul a complete title to parcels 2, 3, and 4, and to Charles Paul an equally good, but no better, title to parcel 1. The deed of 1887 recited a consideration of $30,000, which is perhaps a fact not of great weight, but rather suggestive of something more than a mere desire to confirm the partition decree and strengthen the final decree, which on the day the deed was filed for record was entered in Mary Paul's estate, and assigned to the grantees in the deed the identical property it conveyed, if applicant's position is correct. It seems much more reasonable to conclude that it was intended by the deed to convey something that the grantee did not already own. A permanent easement in the owners of parcels 2, 3, and 4 would evidently be of much

greater value than the one they already possessed, limited by the life of a building which might at any time be destroyed or torn down to be supplanted by a more modern structure.

We hold that the deed conveyed an easement, and that this easement was permanent, not limited, as was the one granted by the partition decree. It follows that the trial court correctly held that, at the date of the commencement of the Pearson registration proceedings, William C. Riley and Daniel Aberle & Sons each owned a perpetual easement for the use of the arched alleyway over the rear of parcel No. 1. It may be noted here that parcel No. 2 is owned by a defendant who did not appear in this proceeding, and that the owner of parcel No. 3 has also an easement of passage over the rear of parcel No. 2, and the owner of parcel No. 4 an easement of passage over the rear of parcels Nos. 2 and 3, as well as the right to use the arched alleyway. Each of these easements is, by the terms of the deed creating it, a permanent one.

2. The serious and important question in the case is whether or not applicant and Daniel Aberle & Sons are bound by the Pearson registration decree, which adjudged their easements to be limited by the life of the building. That this judgment was erroneous we have already held; but, of course, that is, in this connection, unimportant. If it is binding on applicant, he cannot now claim a permanent easement. The question is important, not only as it affects the validity of decrees under the Torrens law as against collateral attack, but as it affects owners of property which may be taken from them by legal proceedings of which they have no notice. We are anxious that a Torrens title be made one which will pass readily, without examination of the records to ascertain if the owner of the certificate had a title that was proper for registration, and without regard to that fact; but we are also anxious to announce no doctrine that will make it easy to deprive another of his property without an opportunity on his part to be heard. We conceive that considerations of public welfare do not demand that we "stretch the law" in order to sustain a Torrens title founded on a judgment rendered without due process of law.

The controlling facts, to which we must apply the law, are that, at the time the Pearson summons was applied for, William C. Riley

and Daniel Aberle & Sons were the record owners of a perpeutal ease-
ment over the land sought to be registered, and were openly in the
enjoyment of such easement. The applicant had both constructive
and actual knowledge of this fact; the deed creating the easement be-
ing on record, the owners being in possession, and the examiner of
titles, having, in his original report, found that an easement was cre-
ated by the deed, and still existed, and having recommended that the
owners of such easement be made parties defendant in the proceed-
ings. Had there been no supplemental report of the examiner, sug-
gesting that it was not necessary to make the owners of the easement
parties, it could not be claimed that the decree would bind parties
not joined or served, contrary to the recommendation in the original
report. Dewey v. Kimball, 89 Minn. 454, 95 N. W. 317, 895, 96
N. W. 704; Baart v. Martin, 99 Minn. 197, 204, 108 N. W. 945, 116
Am. St. 394. All that appellant has on which to base the argument
that the judgment is binding is the statement in the supplemental re-
port of the examiner that it would be unnecessary to join the own-
ers of the easement if the decree registered the title subject to an
easement limited to the life of the building.

Did this relieve the applicant from making parties to the proceed-
ing the owners of an interest disclosed by the records and actually
known by the applicant to exist? If this were not a Torrens law
proceeding, if it were an action to quiet title, or to determine adverse
claims, it would not for a moment be contended that the owner of a
known lien or interest that appeared of record would be bound by a
judgment unless he was made a party and served with the summons.
But it is claimed that this is so under the Torrens law, or at least
that such judgment binds everybody after the 60 days within which
a person having an interest in the land and who has not been actually
served with process may appear and file an answer. And we agree
with this contention, except as we are asked to apply the rule to cases
where the applicant has knowledge of the title, interest, or lien ex-
isting in another, and fails in his application or petition for sum-
mons, or otherwise, to disclose such knowledge.

In the absence of fraud, actual or constructive, it is the law, as
declared by the act itself and the decisions, that a decree of registra-

tion binds all the world. Those not specifically named as defendants are parties to the proceeding under the designation "all other persons or parties unknown claiming any right, title, estate, lien or interest in the real estate described in the application herein," and served by publication. This is the effect of Baart v. Martin, supra, of Doyle v. Wagner, 108 Minn. 443, 122 N. W. 316, and of American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. ed. 82. These cases, and especially the first named, appellant insists, control the case at bar, and compel the conclusion that the judgment in the Pearson proceedings is binding upon Riley and Daniel Aberle & Sons.

In Baart v. Martin the action was to foreclose a mortgage given by Martin to one Ernst and assigned to Baart. Ernst forged Baart's name to a power of attorney to foreclose the mortgage, and it was in form foreclosed, though there was no default in the mortgage. At the sale the property was bid in in the name of Baart, and thereafter Ernst forged Baart's name to a deed conveying the property to one Carl. Carl, though having knowledge of these facts, on December 15, 1903, made application to register title to the land under the Torrens law, which application was filed January 23, 1904, and referred to the examiner January 29, 1904, who reported an unincumbered fee title in Carl. Baart had no knowledge of the forged power of attorney, the attempted foreclosure, or forged deed until in November, 1903. On January 2, 1904, he commenced the action to foreclose his mortgage. The summons was served on Carl February 7, 1904, and a notice of lis pendens filed on March 3, 1904. March 5, 1904, Carl elected to proceed with his registration proceedings, and the summons was issued, served, and published. Though Carl then knew that Martin was the owner of the fee, and that Baart owned an unsatisfied first lien on the property, neither Martin nor Baart was named as a defendant in the proceedings, which resulted in a decree registering the title in Carl as fee owner and not mentioning Baart's mortgage. On these facts it was held that, as Carl knew that Baart claimed a mortgage lien on the land, it was necessary that the latter's name appear in the summons, and that, as he was not an "unknown party," the concealment of his claim is

a fraud on the court, and "the decree therein entered is as to him of no force and effect."

The conclusion that the decree was not binding on plaintiff because of the "fraud on the court" involved an exhaustive review of the authorities on the effect of a Torrens decree under the laws of different states and countries, and a decision that under our statute a decree and certificate procured by fraud, when the owner of the land is not notified as required by the statute, may be vacated and set aside, as long as the title remains registered in the name of the person guilty of the fraud, in an action brought by the defrauded party within a reasonable time after the discovery of the fraud. In other words, a decree and certificate so obtained by fraud do not give an indefeasible title. It is true that it was stated in the opinion that the purpose of the Torrens law was to create an indefeasible title in the person adjudged to be the owner, and that in the absence of fraud a Torrens decree is final and we have no intention or desire to in any respect depart from this doctrine. But we by no means regard the case as conclusive in favor of appellant here. Indeed, it supports the position of respondent.

Doyle v. Wagner was an action to foreclose a mechanic's lien, in which the defense was a decree registering the title under the Torrens system. The lien statement was filed before the registration proceedings were begun; but, owing to a mistake in the description of the property, it was not noted on the abstract or mentioned in the examiner's report, and the trial court found as a fact that the applicant at no time had any notice or knowledge of the existence of the lien. It was held that, the registration proceedings being regular, and there being no fraud, plaintiff was bound by the decree, though not named as a party, and though the decree did not recognize or establish the lien. It is clear that this case does not control the case at bar.

In American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. ed. 82, the Federal Supreme Court had under consideration the validity of a statute of California, entitled "An act to provide for the establishment and quieting of title to real property in case of the loss or destruction of public records." [1] This statute was

---

[1] Cal. St. (Ex. Sess.) 1906, p. 78.

passed at an extraordinary session of the legislature of California, called after the earthquake and fire in April, 1906, and its object was to restore the record title to land in San Francisco, where the records had been destroyed by the great calamity. The act permitted an action by one in possession of property to establish his title. It required the plaintiff to make affidavit before the summons was issued that he does not know and has never been informed of any adverse claimants not named in the summons. It was held that this law did not deprive unknown claimants of their property without due process of law. The statute had been construed by the Supreme Court of California in Title & Document Restoration Co. v. Kerrigan, 150 Cal. 289, 88 Pac. 356, 8 L.R.A.(N.S.) 682, 119 Am. St. 199, and in Hoffman v. Superior Court, 151 Cal. 386, 90 Pac. 939, as requiring the complainant "to designate and to serve as known claimants all whom with reasonable diligence he could ascertain to be claimants," a construction which was said by Chief Justice White "in effect declared that the statute prohibited the omission of a known claim or claimant upon the conception that the rights of such claim or claimant would be foreclosed by the general designation and notice prescribed for unknown claimants." This construction enabled the court to hold the act constitutional, as, when so construed, it manifested "the careful purpose of the legislature to provide every reasonable safeguard for the protection of the rights of unknown claimants, and to give such notice as under the circumstances would be reasonably likely to bring the fact of the pendency and the purpose of the proceeding to the attention of those interested."

It is apparent that the Zeiss case is no authority for upholding a decree where a *known* claimant is omitted from the summons and not served. Indeed, the reasoning of the opinion seems to indicate quite clearly that such a decree would not be binding upon the claimant omitted. The Chief Justice quotes from Hoffman v. Superior Court the statement that "failure of the plaintiff to make inquiry, or to avail himself of knowledge which would be imputed to him because of facts sufficient to put him on inquiry as to the existence of adverse claims, would be available in any subsequent attack upon

the decree, upon the ground that there was extraneous fraud of the plaintiff in making a false affidavit to obtain jurisdiction." That this language met the approval of the court in the Zeiss case is evident. And in discussing the "adequacy of the proceedings pursued" in the Zeiss case it was stated that there was no claim that fraud, actual or constructive, was employed by Zeiss in obtaining the judgment complained of; in other words, Zeiss had no knowledge of the existence of adverse claims or claimants.

The cases we have above discussed do not hold that a registration decree is indefeasible when a known claimant is omitted from the summons, is not served, and has no notice of the proceedings; and we are aware of no case so holding. On the contrary, Baart v. Martin expressly holds that "when the name of a claimant is known to an applicant, either from the report of the examiner, *or from other sources,* the summons cannot be served on such claimant by publication, unless his name appears in the summons," and that "the concealment of his claim is a fraud on the court, and the decree therein entered is as to him of no force and effect." The other cases referred to, by necessary implication, announce the same doctrine. Indeed, no other conclusion seems possible under the language of the act requiring the applicant to set forth in his application the names of all parties who "appear of record or are known to the applicant to have or to claim any right, title, estate, lien, or interest in the land," and requiring the order for summons to contain the name and address, so far as known, of every person named in the application or found by the examiner as having any such right, title, interest, estate, or lien. State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L.R.A. 297, 89 Am. St. 571; Ware v. Easton, 46 Minn. 180, 48 N. W. 775; Dewey v. Kimball, 89 Minn. 454, 95 N. W. 317, 895, 96 N. W. 704.

We do not understand counsel for appellant to question this. He admits that, if the applicant fails to disclose to the court the existence of a claim or claimant known to him, this is a fraud upon the court, and that the decree may be set aside in a direct action for that purpose. But he claims that it is not shown that the applicant knew of the easements claimed by Riley and Daniel Aberle & Sons,

and that in any event there must be a direct action to set aside or modify the decree.

3. It may be that Mary Pearson had no actual personal knowledge of the duration of the easements claimed. But her attorney had. He may have considered that legally the easements were not permanent, but he knew all the facts, or at least is charged with such knowledge—the examiner's first report, the deed of record, the fact of possession, if it may be so called. Clearly the applicant is charged with the knowledge acquired by her attorney. It is not clear why the recommendations in the original report were not followed, why the supplemental report was made, or what influenced the examiner to change his opinion. But certainly the astute and able counsel knew every fact relating to the claims of the owners of parcels 2, 3, and 4, and it is immaterial if he still considered that the easements continued only so long as the store building should stand. We do not believe for a moment that there was any intent to commit a fraud on the court. The high character of the counsel is sufficient evidence to rebut any inference that might otherwise be drawn from the facts. But such actual intent of purpose to defraud the claimant is not necessary. We think that constructive fraud is sufficient, and that the omission to disclose the adverse claims was such a fraud upon the court. The use of the term "fraud" in this connection is perhaps unfortunate, naturally implying, as it does, moral turpitude and bad faith. It is the fact itself that a known claimant was not made a party or served that makes the judgment not binding upon him, rather than any bad faith in concealing the existence of the claim or claimant.

It is insisted that the applicant disclosed to the court all the facts upon which the character of the easement depended, including the deed by which it was created. It is certainly true that the first report of the examiner disclosed this deed, and that it was referred to in the abstract. But it may be noted that this information did not come from the applicant, and we are not prepared to hold that the fact that it was possessed by the court, or, more accurately, that the facts were disclosed in the files of the case, relieved applicant of the duty of doing anything further to disclose the names of claim-

ants. The fact still remains that neither in the application, nor in the petition for the summons, was any mention made of the easements claimed by Riley and Daniel Aberle & Sons. It is, of course, the duty of the court to determine what parties shall be named as defendants in a registration proceeding; but it is not to be expected that the court can or should do this without the aid of the applicant and the examiner. Had the applicant disclosed the fact that the deed granted a perpetual easement, and that Riley and Daniel Aberle & Sons were the record owners of such easement, in the actual enjoyment thereof, all facts within the applicant's knowledge, it would not be necessary now to claim that the court, not the applicant, was responsible for the failure to name the owners in the summons.

4. It is strenuously insisted that the decree is binding in any event until set aside or modified in a direct proceeding brought for such purpose. This would clearly be true in case of fraud that did not go to the question of the jurisdiction of the court over the parties. But this is a case where, as we have held, the court never acquired jurisdiction over the persons who are now insisting that the decree is not binding upon them. And this want of jurisdiction appears affirmatively from the judgment roll itself. The rule applicable to such a case is well settled; that is, such a judgment is a nullity as to those not parties to it, and may be attacked collaterally. Kanne v. Minneapolis & St. L. Ry. Co. 33 Minn. 419, 23 N. W. 854; Jewett v. Iowa Land Co. 64 Minn. 531, 67 N. W. 639, 58 Am. St. 555; 2 Dunnell, Minn. Digest, § 5141. We see no reason why this rule should not apply to a judgment in a Torrens proceeding, as well as in any other action.

We fully agree that a Torrens certificate, based upon a decree in a proceeding in which the law as to naming and serving known claimants is complied with, gives, in the absence of fraud, an indefeasible title, and is not merely evidence of the title which the applicant had before the decree. All claimants unknown to the applicant, and not named in the examiner's report, are parties to the proceeding as "unknown parties;" but where it affirmatively appears that claimants known to the applicant or named by the examiner are not made parties, the decree is not binding on such claimants, and may be

attacked collaterally. Any other conclusion would go far to remove the safeguards which make the law constitutional. It would make a strong argument for holding that the act was invalid, because the proceedings provided do not constitute due process of law. In its last analysis the case reduces itself to the plain proposition that no man can be deprived of his property without notice and an opportunity to be heard. We may call the attempt to do this fraud, or we may say it was a mistake; but the result is the same—a judgment claimed to be binding against known owners of an interest in the land, who were not made parties or served with summons, and who had no actual notice of the suit.

We have considered very carefully the able arguments and briefs of counsel, and our conclusions are in harmony with those reached by the trial court.

Order affirmed.