## VILLAGE OF SAVAGE v. GEORGE ALLEN.

95 N. W. (2d) 418.

March 13, 1959—No. 37,514.

*Julius A. Coller II,* for appellant.

*Faegre & Benson, Paul J. McGough,* and *Rex H. Kitts,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment for plaintiff. The action was commenced by the village of Savage to vacate and set aside an order and decree of title registration in Torrens proceedings dated August 14, 1953, and the certificate of title issued pursuant thereto; to vacate and set aside the stipulation withdrawing the answer of the village filed by the then village attorney; and to reinstate the answer in said proceedings.

The certificate of title granted George Allen, defendant in these proceedings, title to certain property referred to herein as the public square in said village. The area in question is vacant and unimproved. A part of the area excluded from the Torrens proceedings contains a public building.

Briefly, the village claims that Allen perpetrated fraud upon the village and upon the district court in the Torrens proceedings with respect to certain representations made in his application to register title to the property involved and also in connection with his testimony. This claim is denied by Allen, who contends that the Torrens proceedings were duly brought on for hearing in August 1953; that the village had withdrawn its answer; that the subsequent decree was valid; that the village has no right to question its validity; and, if it has such right, that it was guilty of laches in asserting it.

The trial court found, among other things: That on December 3, 1858, a plat of the village of Hamilton (now Savage) was filed in Scott County and on the plat a block was marked and designated

"Public Square";[1] that in 1947 Allen instituted an action to register title to certain lands described in the findings, which lands are a part of the block marked and designated on the plat as "Public Square" (excluding the portion occupied by public buildings); that the village was named as one of the defendants in the action to register title and interposed an answer through its then Minneapolis attorneys, asserting its ownership of the public square and denying that Allen had any right, title, or interest in it; that early in 1953 another village attorney was appointed and was substituted in the action to register title; that on July 22, 1953, the substituted attorney signed a stipulation withdrawing the answer previously filed by the village and also consented to a default hearing and to the entry of judgment in favor of Allen; that this was done by said attorney without authority from the village and without any disclosure to the village that he had signed such a stipulation; that Allen, in a signed, verified application in the action to register title, represented that there were no persons or parties except himself whose names or residences appear of record, or who were known to the applicant to have or to claim any right, title, estate, lien, or interest in the property involved; also that the land was occupied by the applicant Allen[2] and that there was no other person having or claiming any estate or interest in law or equity, in possession, remainder, reversion, or expectancy in said land; that pursuant to the stipulation signed by the substitute attorney for the village the action to register title was heard as a default matter before the district court on August 14, 1953, with the substituted village attorney present; and that Allen testified under oath that he was the owner and in possession of all of the land involved in the application and made no mention of the interest or claims of the village.

The court further found that Allen was a member of the village council for 23 years, including continuous service from 1923 to 1939, and thereafter served in other official capacities for the village; that his

---

[1] It appears from the trial court's memorandum that the plat does not contain a specific dedication of the public square for public use.

[2] The original application shows that land other than the "Public Square," also included in the application, was occupied by certain month-to-month tenants of Allen.

claim of title to the public square is based on a deed from Eli O. Kearney in 1945;[3] that in 1939 Eli O. Kearney brought suit against the village and members of its council, which included Allen, to enjoin certain uses of the public square and to recover damages; that Allen, on his own behalf and as a member of the council in behalf of the village, verified the answer that was interposed in that suit, which answer denied under oath that Kearney had any title to the public square and alleged that the square was dedicated to the use of the public and that such use had at no time been abandoned, and also alleged that the same issues were previously tried and determined by the same district court in 1925 in a suit instituted by Peter Kearney (father of Eli) against the village and that judgment in that case was in full force and effect and res judicata in all matters involved in the Eli O. Kearney suit.

It was also the finding of the court that since the filing of the plat in 1858 the public square had been exempt from taxation as public property and had been maintained, claimed, and treated as such by the village; that no one other than the village was in possession or occupancy except for certain public parking purposes permitted by the village; that such conditions obtained throughout Allen's years of service as a public official of the village and were well known to him when he instituted the Torrens proceedings in 1947 and when the matter was heard on August 14, 1953; that the representations made by Allen in his verified application and in his *testimony under oath* at the hearing in the action to register title were false and misleading and known to be such by him; that such representations and his concealment of the claims

---

[3] By way of historical background, it appears from the record that the plat of the village designating a full block as "Public Square" was filed in 1858 by John Kearney. In 1925 Peter Kearney, a son and heir of John Kearney, instituted suit in the District Court of Scott County against the village to recover possession of the public square, claiming ownership in fee (except a tract 100 feet square then occupied by public buildings). The village interposed an answer in that suit alleging dedication to the public in 1858, acceptance by the village, and continuous use of the block as a public square. Judgment was entered in favor of the village. Thereafter, Peter Kearney deeded the public square (except the 100-foot square) to his son Eli O. Kearney, under whom Allen claims title through a quitclaim deed in 1945.

and interest of the village in the matter were a fraud on the District Court of Scott County; that said court was fraudulently induced by Allen's representations and concealment to make and enter a decree registering title in the name of Allen on August 14, 1953, and pursuant thereto, to issue a certificate of title to him; that the entry of said decree of registration did not come to the attention of the village until about July 1, 1954, when its authorities discovered that the public square was on the tax rolls, whereupon the village promptly retained new counsel and this action was commenced to set aside the decree, a notice of lis pendens being filed on July 30, 1954.

The court also found that the village was not guilty of laches in instituting this action and that defendant was not prejudiced by any delays in its commencement.

In its conclusions of law the district court held that the village has such an interest in the property involved as to be entitled to bring this action; also that—

"The representations that were made by defendant in his action to register title and his concealment of the plaintiff's claims and interest in the Public Square, constituted a fraud on the District Court of Scott County which entitles plaintiff village to a judgment vacating the decree of registration in said action, insofar as it applies to the Public Square or any part thereof, adjudging invalid and canceling defendant's Certificate of Title No. 1206 and any subsequent or residue certificate now outstanding covering the Public Square or any part thereof, * * * ordering the issuance of a new certificate in place of the outstanding certificate so canceled, but excluding the Public Square or any part thereof, vacating and setting aside the stipulation withdrawing the answer of the Village of Savage in Torrens Case No. 75 and reinstating the answer interposed by said village in said action."

Judgment was ordered and entered accordingly, from which judgment this appeal was taken.

In its memorandum the court commented that the reason for the withdrawal of the answer by the substituted village attorney had never been explained in district court although there was evidence that said attorney admitted that he made a "terrible mistake." It was the opinion

of the trial court, however, that there was not sufficient evidence to sustain a finding of fraud on the part of Allen in securing a withdrawal of the answer of the village so it determined that the village had failed to sustain its burden in this respect.

It is difficult to understand from the record here why an attorney appointed by the village would take such action, which he must have known would result in the issuance of a certificate of title to Allen, without notifying the village council. It is undisputed that the council never authorized the withdrawal of the answer or the stipulation in the default proceedings; nor did it learn of the proceedings until almost a year later.

Normally, pursuant to M. S. A. 508.28, land registration decrees or judgments are not subject to attack after 6 months from their entry. This does not apply, however, to a registration which was obtained by fraud. Baart v. Martin, 99 Minn. 197, 108 N. W. 945; In re Application of Rees to Register Title to Land, 211 Minn. 103, 300 N. W. 396. Section 508.51 provides in part that in all cases of registration which are procured by fraud the owner may pursue all his legal and equitable remedies against the parties to such a fraud.

With respect to the objection of laches, in the Baart case it was held that as long as the title remained registered in the name of the person guilty of the fraud the decree and certificate of registration might be set aside in an action brought by the defrauded party within a reasonable time after notice of the fraud. We have also held that fraud upon the court can constitute sufficient grounds to render a judgment not binding in proceedings under the Torrens Act to register title. Riley v. Pearson, 120 Minn. 210, 139 N. W. 361, L. R. A. 1916D, 7. That case involved proceedings to register title under the Torrens Act where the applicant failed to disclose to the court the names of persons known to him to have an interest in or lien upon the property. It appeared there that such persons were not named as parties to the proceedings or served with summons and did not have actual notice of the proceedings. It was held that a judgment rendered therein was not binding upon such persons. The court further said (120 Minn. 222, 139 N. W. 365): "We think that constructive fraud is sufficient, and that the omission to disclose the

adverse claims was such a fraud upon the court." See, also, Baart v. Martin, *supra*.

The fact situation in the instant case differs in some respects from those in the Riley case. Here Allen in his 1947 application to register title failed to disclose the claim of the village; subsequently, however, the examiner to whom the court referred the matter reported that the village, among others, should be named as party defendant in the proceedings, which was done. The village was served with a summons and filed its answer. Between 1947 and August 14, 1953, the date of the hearing on the registration proceeding, the answer was withdrawn and a stipulation was entered into agreeing that the application of Allen might be heard as a default matter and consenting to any judgment that might be entered thereon, all without consent or knowledge of the village council. Yet in the face of all these facts, which Allen knew or should have known, he again testified under oath at the August 1953 hearing that he was the owner and in possession of the land involved and made no mention of any claims or interests of the village in the proceeding.

Normally it might be said that the fact that the village withdrew its answer and stipulated to a default decree through its official attorney might justifiably indicate to Allen that the village was no longer claiming an interest in the property. However, under the particular facts and circumstances of this case, with Allen's longtime knowledge of the disputed situation, both as a member of the council and otherwise, we cannot say that his concealment did not constitute at least a constructive fraud on the court. Had the court in the registration proceedings been fully apprised of all these matters, its decision might well have been different. It is apparent here that the trial court in the default proceedings relied upon the testimony of Allen in support of his right to the decree. In Riley v. Pearson, *supra,* we said that while it is the duty of the court to determine what parties shall be named in registration proceedings it is not to be expected that the court can or should do this without the aid of the applicant and the examiner.

We have examined the issues raised by Allen and it is our opinion that under the record here the trial court was correct in finding that the District Court of Scott County was fraudulently induced by Allen's

representations and concealments at the default hearing to make and enter the decree of August 14, 1953, registering title of the property involved in his name.

It is our further opinion that the judgment of the trial court should be affirmed.

Affirmed.