Apolinar RAEL, Rosendo Martinez, Joseph E. Medina, Daniel Sequra, Gilbert Medina, Loyola Medina, Juan LaCoombe, Bonnie Lobato, Walter Vigil, Eugene Lobato, Rudy Montoya, Clorindo Martinez, Adelmo Kaber, Emilio Lobato, Leandardo Medina, Alfanzo Medina, Rupert Gallegos, Gloria Gallegos, Robert Atencio, Frank Sanchez Bentura Roybal, S.R. Sanchez, Leonides Atencio, Cruicito Maez, Henry Lobato, Vernon Sanchez, Ruben Herrera, Billy Alire, Willie Alire, Richard Garcia, Eppy Quintana, Willie Ray Montoya, Pete E. Espinoza, Raymond J. Maestas, Bobby Maestas, Shirley Romero, Marvin Medina, Manuel Gardunio, Leonardo Martinez, Tonita Garcia, Orry Medina, Raymond Garcia, Floyd R. Solan, Adolph J. Lobato, Presentacion Lobato, Elesam Santistevan, Raymond N. Medina, Agatha Medina, Juan DeHerrera, Hubert J. Martinez, Emejido Vialpando, Joe P. Vigil, Larry J. Vigil, David Martinez, Charlies Jaquez, Jr., Ervin L. Vigil, Manuel Maestas, Pete Lobato, Anthony Sanchez, Emilio DeHerrera, Jose F. Lobato, Eugene Sanchez, Gerald Sanchez, Lawrence Vialpando, Bonnie Sanchez, Jose G. Sanchez, Elmer Manuel Espinoza, James Sanchez, Gilbert Herrera, Robert Romero, Carlos Lobato, Andres Montoya, Bert Maestas, Henry Rodriguez, Michael J. Vigil, Jose R. Torres, Manuel Vigil, Evan Sanchez, Solestiano Martinez, Rufino Sanchez, Arnold Valdez, Caroline Taylor, Martha Vialpando, Mark Martinez, Jesse Martinez, Ruben Gallegos, Joe A. Gallegos, Moises Gallegos, Margarito Espinoza, Sam Valdez, Jose F. Carson, Ronald A. Sandoval, Daniel Martinez, Frances D. Berggran, Maria Jaquez, J.R. Jaquez, Alberto Quintana, Jeffrey Jaquez, Frank Olivas, Gertrude C. Olivas, individually and as representatives of the Class of Heirs and successor in interest to the original settlers of the Sangre de Cristo Grant, Petitioners and Cross–Respondents,

v.

Zachary TAYLOR, as Executor of the Estate of Jack T. Taylor, Jr., Deceased, Respondent and Cross–Petitioner.

No. 92SC74.

Supreme Court of Colorado, En Banc.

May 2, 1994.

As Modified on Denial of Rehearing July 25, 1994.

Goldstein and Dodge, Jeffrey A. Goldstein, Stern and Elkind, Kenneth H. Stern, Sander N. Karp, Don & Hiller, P.C., Watson W. Galleher, Denver, for petitioners and cross-respondents.

Wolf & Slatkin, P.C., Albert B. Wolf, Denver, for respondent and cross-petitioner.

Feiger, Collison & Killmer, Gilbert M. Roman, Darold W. Killmer, David H. Miller, Denver, for amicus curiae American Civil Liberties Union Foundation of Colorado.

Robert M. Maes, Lisa D. Hamilton–Fieldman, F. Lee Maes, Patti J. Enoch, Denver, Nora Jaquez, Englewood, for amici curiae Hispanic Natl. Bar Ass'n, Colorado Hispanic Bar Ass'n, and The Hispanic League.

California Rural Legal Assistance Foundation, Richard Garcia, Stephen A. Rosenbaum, Sacramento, CA, Intern. Center for Human Rights Litigation, Todd Howland, Eliot Lee Grossman Brezin, Centro, Mexico, D.F., for amici curiae Bi–National Human Rights Com'n, Intern. Indian Treaty Council, Natl. Chicano Human Rights Council, and Comision De Derechos Humanos De Seminario Permanente De Estudios Chicanos Y De Fronteras.

Karsh & Fulton, P.C., Larry C. Fulton, Alan E. Karsh, Seymour Joseph, Denver, for amicus curiae Land Title Ass'n of Colorado.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Rael v. Taylor,* 832 P.2d 1011 (Colo. App.1991), the court of appeals affirmed a judgment entered by the Costilla County District Court in favor of the respondent, Zachary Taylor, executor of the estate of Jack T. Taylor, Jr.,[1] against the petitioners, 100 persons claiming usufructuary rights in a parcel of land consisting of approximately 77,500 acres located in Costilla County, Colorado (the "Mountain Tract").[2] The trial court held, *inter alia,* that in view of the decision in a federal court Torrens Act proceeding filed by Taylor in 1960 (the 1960 Torrens action), the petitioners' claims were barred by the doctrine of res judicata and by certain statutes of limitation.[3] The court of appeals also affirmed the trial court's denial of Taylor's request for attorney fees. Hav-

---

1. Jack T. Taylor, Jr., died during the pendency of the trial court proceedings. He and his executor will be referred to as "Taylor" throughout this opinion.

2. The second amended complaint (hereafter "the complaint") lists 110 persons as petitioners. The

caption of the court of appeals' decision lists 100 persons as appellants.

3. At trial, the respondent asserted as defenses and as grounds for the entry of summary judg-

ing granted certiorari to review the court of appeals' judgment, we affirm in part, reverse in part, and remand the case to the court of appeals with directions.

I

In 1844, Narcisco Beaubien and Stephen Luis Lee received a land grant (the Sangre de Cristo Grant) from the then Mexican governor of New Mexico, of approximately 1,000,000 acres of land located to a large extent in the central southern portion of Colorado. After Beaubien and Lee were killed in 1847, Narcisco Beaubien's father, Carlos, inherited his son's undivided one-half interest in the property and purchased the remaining interest from Lee's estate.

Following the Mexican–American War, the 1848 Treaty of Guadalupe Hidalgo transferred sovereignty over the Sangre de Cristo Grant property to the United States. In 1860, the Congress of the United States adopted a recommendation by the United States Surveyor General to confirm that Carlos Beaubien owned the land, and Carlos Beaubien was issued a patent for the land in 1880.

Prior to 1860, Carlos Beaubien had sold numerous small parcels of the land to various settlers. On May 11, 1863, he executed and recorded a document written in the Spanish language that described, *inter alia,* usufructuary rights for wood, timber, water, and pasture of the residents of certain towns located within the boundaries of the property. The document, translated, provides in pertinent part as follows:

> Town of San Luis of the Culebra, May 11, 1863 Book 1, Page 256
>
> It has been decided that the Rito Seco lands shall remain uncultivated for the use of the residents of San Luis, San Pablo and the Vallejos, and other inhabitants of said towns, for pastures and community grounds, etc. And that the Rito Seco wa-

ters are hereby distributed among the said inhabitants of the town of San Luis, and those on the other side of the Vega, whose lands lie in the vicinity and cannot be irrigated by the water of the Rio Culebra. After measuring off three acres in front of the Church, which are hereby donated to it, the Vega shall be for the use of the inhabitants of this town and of the others up [unintelligible] the Vallejos Creek and also for the benefit of those who may in the future, settle on the Gregorio Martin Creek (San Francisco) from the road down to the narrows. It is understood that the lots shall run East and West, 50 varas, and never North and South and no one shall have a right as they might have thought, to place any obstacles or hindrances to interfere with the rights of others. The regulations as to roads shall be also observed so as to allow every one to have access to his farm lands. Also, in using the water, care shall be taken not to cause damage to any one.

> All the inhabitants shall have the use of pasture, wood, water, and timber and the mills that have been erected shall remain where they are, not interfering with the rights of others. No stock shall be allowed in said lands, except for household purposes. All those who come as settlers shall agree to abide by the rules and regulations and shall help, as good citizens and be provided with the necessary weapons for the defense of the settlement.
> TWO WITNESSES (Signed) Carlos Beaubien

Carlos Beaubien died in 1863. On April 7, 1864, pursuant to an oral agreement Carlos Beaubien made prior to his death, his heirs conveyed all the unsold Sangre de Christo Grant property to William Gilpin. The instrument of conveyance contained the following "express condition":

> [C]ertain settlement rights before then conceded by said Charles Beaubien to residents of the settlements of Costilla, Culebra & Trinchera, within said Tract included, shall be confirmed by said William Gilpin as made by him, the said Charles Beaubien during his his [sic] occupancy of

ment, *inter alia,* that the action was barred by § 38–41–101, 16A C.R.S. (1982); § 38–36–132,

16A C.R.S. (1982); and/or § 38–41–108, 16A C.R.S. (1982).

said Tract and as understood and agreed by and between him and said settlers. and sale & conveyance and title be made to the parties lawfully, and title thereto on compliance on their part with the terms by them entered into, of which parties so entitled a list marked .A. accompanying this agreement and is annexed to and made a part hereof [sic]. Now therefor this agreement and obligation in its full intent, meaning & object and under the liabilities assumed in the covenant and agreements in the same contained, is made to secure the specific performance of the obligations & liabilities of the said Charles Beaubien on the part of said William Gilpin and to perfect the right of said parties entitled as aforesaid in accordance with the conditions of the said Charles Beaubien entered into, and all of which are hereby said William Gilpin recognized and confirmed.

Between 1864 and 1960, Gilpin and his successors in interest sold most of the remaining property. In 1960, Taylor purchased one of the few remaining large parcels. Known as "the Mountain Tract," the parcel consisted of some 77,500 acres of undivided and unfenced land located in Costilla County, Colorado, southwest of San Luis, Colorado, containing significant timber, grazing, water, and wildlife resources. Taylor's deed to the Mountain Tract contains the following pertinent provisions:

All of the land hereby conveyed being subject to rights of way of record and all rights of way heretofore located and now maintained and used on, through, over, and across the same; and also subject to claims of the local people by prescription or otherwise to right to pasture, wood, and lumber and so-called settlements [sic] rights in, to and upon said land, but not subject to rights granted by the party of the first part or its predecessors from and after January 1, 1900; and also subject to taxes

for the year 1960 and subsequent years, and existing leases, if any.

On September 1, 1960, shortly after purchasing the Mountain Tract, Taylor filed a petition in the United States District Court for the District of Colorado[4] to register title in this land as provided for in Colorado's 1953 Torrens Title Registration Act, sections 118-10-1 to -102, 5 C.R.S. (1953).[5] *Taylor v. Jaquez*, Action No. 6904 (D.Colo. Oct. 5, 1965). The application listed over 300 individuals as interested parties and referred to other persons "having or claiming any estate, interest or claim in law or equity in possession, remainder, reversion or expectancy in said land," as follows:

[A]ll other persons similarly situated who claim certain settlement rights under that certain instrument executed by Carlos Beaubien and recorded in Book 1, page 256 of the Costilla County Records and purporting to grant unto the people of San Luis, San Pablo and the Ballejos, dwelling and pasture rights on the lands of the Rito Seco, and also all persons claiming under a certain deed executed by Frederick Miller and Jesus Abreau as executors under the Will of Carlos Beaubien wherein certain settlement rights were confirmed by William Gilpin, the purchaser thereunder, said deed referring to the settlements of Costilla, Culebra and Trinchera, and the settlers to whom such rights accrued were named in a list marked "A" purportedly attached to said deed but which said list has never been found and settlers remain unidentified.

The application also contained the following averments:

[S]aid persons listed under the instruments above have no rights because said instruments refer to the lands of the Rito Seco [sic], which lands are not within the boundaries of petitioner's land and further, since no list of settlers has ever been found, said confirmation by William Gilpin

---

4. Because Taylor was a North Carolina resident, the federal court had diversity jurisdiction over this state-law-based action pursuant to Title 28 U.S.C. § 1332. *Sanchez v. Taylor*, 377 F.2d 733, 736 (10th Cir.1967).

5. The Torrens Act is currently codified at §§ 38-36-101 to -198, 16A C.R.S. (1982 & 1993 Supp.).

is of no effect since it runs to no ascertainable persons.

Pursuant to section 38–36–113 of the Torrens Act, the trial court appointed W.W. Platt as examiner of titles. Platt ultimately filed a "Certificate of Opinion on Title to Mountain Tract" that contained the following pertinent statements:

> The same Claims to these alleged pasture and wood rights have been asserted in an action to quiet title to adjoining land now pending in the District Court of Costilla County. I am one of the attorneys for the plaintiff in this action. Attorney E.E. Romero of Taos, New Mexico, appears as principal attorney for the defendants therein. I have tried to learn from him the names of the persons who claim these rights and the extent of such claims, but he has told me that he has tried to get this information from his clients but has been unable to do so. I have recently asked Mr. Amadeo Vigil, who is very active in the affairs of the above mentioned Association,[6] for a list of these claimants and he has told me that no such list has ever been made but that the claims are made on behalf of all owners of land in Costilla County. Paragraph Sixth [sic] in the Petition in this action names 316 persons as persons claiming interests in this land. Only 47 of these names appear in the abstract of title, and the attorneys for petitioner inform me that the other 269 names on the list are names of persons whose only possible interest in The Mountain Tract would be as landowners in Costilla County claiming such rights to pasture and wood solely because they are such landowners.[7]

On December 22, 1960, after receiving Platt's report and Taylor's election to proceed, the court ordered the clerk of the court to issue summonses to all named defendants and to publish notice for non-resident defendants and "'all such unknown persons or parties' in the *Free Press*, a newspaper of general circulation published in Costilla County, Colorado, once in each week for six consecutive weeks."

On January 20, 1961, attorneys Sam Taylor and Eliu E. Romero entered their appearance on behalf of all the named defendants. On May 2, 1961, an answer was filed which, according to its terms, was filed "by the defendants" and was signed by the two attorneys as attorneys "for defendants." The answer asserted that the defendants possessed usufructuary rights and rights of prescription in lands in the Mountain Tract.

On February 14, 1962, Taylor mailed interrogatories to each of the then-named defendants. Attorneys Sam T. Taylor and Eliu E. Romero subsequently entered their appearances on behalf of an additional 133 defendants, and on March 5, 1962, the trial court

6. The report describes this association as "an unincorporated organization called the 'Association of Civic Rights.'"

7. The record indicates that at the time Taylor filed his Torrens action, the names of some 886 landowners appeared on the tax rolls for the towns of San Luis, San Pueblo/San Pedro, Chama and San Acacio, the towns closest to the Mountain Tract. In a deposition taken in November 1982, in the instant case, an attorney retained by Taylor prior to the filing of the 1960 Torrens action stated that "[w]e have attempted to name everybody who had ever asserted any claim to any of these rights on the Taylor land." The attorney indicated that he did not remember or know how the names of the persons specifically identified were selected, but stated that no attempt was made to name all of the property owners in Costilla County. On January 13, 1949, this attorney wrote a letter addressed to "The residents of the Vega Lands," which contained the following statements:

> In 1936, Mr. Albert L. Moses gave an opinion to Mr. J.J. Valdez and Mr. J.E. Sanchez that the owners of land in the Grant who obtained their title through those originally settling the land have the right to go upon the timbered portions of the Grant and take therefrom the necessary fire wood for their own personal uses and the necessary timber for use in connection with the land which they own (but not for sale), and likewise have the right to pasture their own domestic animals, not by herding them upon the land but by permitting them to graze thereon.
>
> We still believe that this is the case and that you would have the right to stop anyone who interferes with these rights.

The attorney stated in his deposition that the term "Vega" refers to a piece of land that was "either near or adjacent to the town of San Luis" and was used for pasture but not used for timbering.

ordered Taylor to mail interrogatories to these additional defendants.

On May 9, 1962, Taylor filed a motion to require all defendants to answer the interrogatories within thirty days. The motion was granted. On June 19, 1962, Taylor moved for entry of default against all named defendants who had not filed answers to the interrogatories. After a hearing, the trial court extended the deadline for answering the interrogatories to July 20, 1962. On that date, attorney Alfred Craddock entered an appearance on behalf of nine additional persons and requested an order permitting these additional defendants to answer Taylor's interrogatories.

On July 31, 1962, the trial court entered default judgments against 369 named defendants for failure to file timely answers to Taylor's interrogatories. The court's order stated that answers had been received from 103 defendants and granted the nine defendants represented by Craddock an extension of time within which to answer the interrogatories. Those nine defendants did file such answers.

On January 14, 1963, Taylor filed a motion for summary judgment against the 112 defendants who had answered his interrogatories.[8] The motion contained the following statement: `

> [Taylor] is the owner, by purchase, of such land under deed dated February 15, 1960; by virtue of such purchase and mesne conveyance from the original patentee, he is the owner of the fee simple absolute title thereof. [Taylor] and his predecessors in title have maintained continuous possession of the subject land and have exercised complete dominion over it since the issuance of the original grant from the Mexi-

can government, have continuously paid the taxes on said land and have maintained sole and exclusive use and occupation thereof.

The trial court denied the motion with respect to the claims asserted by the defendants for individual rights by prescription, but granted the motion with respect to the defendants' claims of common usufructuary rights in the Mountain Tract. After a bench trial, the trial court determined that the defendants owned no prescriptive rights in Taylor's property and entered a "Final Decree on Confirmation of Title and Registration" pursuant to section 38–36–130 of the Torrens Act.

On appeal, the Tenth Circuit Court of Appeals held that the 1860 congressional confirmation of the Sangre de Cristo Grant extinguished "any conflicting rights prior to the confirmatory Act of 1860 which might have arisen or existed by reason of the original grant from Mexico, considered in light of Mexican law and the Treaty of Guadalupe-Hidalgo...." *Sanchez v. Taylor*, 377 F.2d 733, 737 (10th Cir.1967). The court further held that neither the Beaubien document nor the agreement between his heirs and Gilpin evidenced a clear intent to establish or recognize a "dedication" of the usufructuary "privileges" the defendants sought to establish.[9] *Id.*, at 737–38. The court affirmed the trial court's determination that none of the individual defendants owned prescriptive rights in the Mountain Tract and affirmed the judgment confirming Taylor's title thereto. *Id.* at 738–39.

## II

On March 2, 1981, the petitioners filed this civil action in the Costilla County District

---

8. The motion did not request entry of judgment against named defendant Board of County Commissioners of Costilla County.

9. The translation of the Beaubien document recognized by the Tenth Circuit Court of Appeals for purposes of its analysis contained the following language:

> It has been ordered (decreed) that the lands of the Rito Seco remain uncultivated for the benefit of the people of the town of San Luis, San Pablo and Los Ballejos and the other inhabitants of these towns, for the purpose of ingress and pasture, etc. and that the water of

> said creek shall be apportioned between the inhabitants of the said town of San Luis and those on the other side of the vega who have lands adjoining and close to the said vega, since said lands are not irrigated with the waters of the Culebra River....

> All the inhabitants shall have the right, with convenient arrangement, to enjoy the benefits of the grazing lands, water, wood and timber, always being careful not to be prejudice [sic] with one another.

*Sanchez,* 377 F.2d at 735 n. 1.

Court to quiet title to the Mountain Tract and, alternatively, for damages.[10] Taylor and over 240 other persons and entities are named as defendants. The complaint alleges that the petitioners, all but four of whom are residents of Costilla County, Colorado, "were and are heirs or successors in interest of the original settlers of the Sangre de Cristo Grant at or near the towns of San Luis, San Pablo, San Acacio, Chama, San Francisco, and La Valle, territory of New Mexico, Republic of Mexico, now within the County of Costilla, State of Colorado." The complaint also alleges that the case is "brought on behalf of the heirs and successors in interest to the original settlers of the Sangre de Cristo Grant";[11] that the Mountain Tract has been "historically subject to the community rights and uses of the [petitioners] for grazing, lumber, fire, wood, water, pasturing, hunting and recreational uses"; and that the decree issued in the 1960 Torrens action is void because it was obtained in violation of the petitioners' constitutional rights to due process of law.

The complaint contains three claims for relief. The first claim alleges that the Mountain Tract is a "community land grant under the laws of Mexico and Spain, the custom of the people of the area, by grant and dedication express and implied, and as guaranteed to the plaintiffs under the Treaty of Guadalupe Hidalgo in perpetuity." The second claim contains the following allegations:

Use of [Taylor's] land for grazing, wood, [sic] gathering, timber, hunting, fishing, and recreational uses is guaranteed to the [petitioners] and their class by the law of Mexico and Spain, customs of the people of the area, by grant and dedication express and implied, and as guaranteed to the [petitioners] under the Treaty of Guadalupe Hidalgo in perpetuity.

The third claim is based on sections 38–36–187 to –188 of the Torrens Act, which provisions authorize recovery of damages from an assurance fund by persons otherwise barred by the Torrens Act from seeking recovery of land or an interest therein. The complaint alleges, *inter alia*, that Taylor improperly failed to join necessary and ascertainable parties named as defendants.[12]

On April 1, 1985, Taylor filed a "MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT," which motion included a request for attorney fees. Taylor argued that the petitioners' claims were barred by the doctrines of res judicata, stare decisis and collateral estoppel. Taylor further argued that the claims were barred by the Torrens Act, by C.R.C.P. 105, by adverse possession, abandonment, several statutes of limitations[13] and by laches. Taylor also argues that the trial court lacked subject matter jurisdiction over the petitioners' claims.

The trial court granted Taylor's motion.[14] It held that the claims asserted by the defendants in the 1960 Torrens action were "the

10. The complaint also requested an order declaring void a quiet title decree entered in a state court proceeding affecting title to another tract of land, the Salazar Tract, on grounds of constitutionally insufficient notice. As the petitioner acknowledged at oral argument, only issues relating to the Mountain Tract and the 1960 Torrens action are before this court. The record indicates that some of the petitioners were named defendants in the 1960 Torrens action, that some of those named defendants filed answers to Taylor's interrogatories, and that the others failed to answer the interrogatories and suffered default judgments.

11. The trial court has not determined the petitioners' request to certify the case as a class action.

12. Other improprieties alleged to have occurred during the course of the 1960 Torrens action include assertions that the qualifications and

conduct of the Examiner of Titles were improper; that the entry of default judgments against defendants was improper because the trial court and Taylor's attorney knew or should have known that those defendants were not in fact represented by any attorneys; that attorneys Sam T. Taylor and Eliu E. Romero were incompetent; and that the trial court erred in failing to conduct a hearing to determine the adequacy of Taylor's proposed service by publication.

13. *See* Note 3, *supra.*

14. The trial court stated that it assumed all the facts alleged by the petitioners to be true for purposes of its ruling. However, the trial court also stated that no significant factual disputes existed.

same as the claims asserted by [petitioners] in this case"; that "[t]he usage in the federal case was the same as the usage here asserted"; and that the petitioners' contentions concerning the status of their rights had been considered and rejected in the 1960 Torrens action. The trial court denied Taylor's request for attorney fees.

The petitioners appealed the trial court's judgment dismissing their claims to the court of appeals, and Taylor cross-appealed on the issue of attorney fees. The court of appeals affirmed.

With respect to the petitioners' appeal, the court of appeals affirmed the trial court's judgment on the single ground that the petitioners' claims were barred by the doctrine of res judicata. *Rael v. Taylor,* 832 P.2d 1011, 1014 (Colo.App.1991). Citing *Newby v. Bock,* 120 Colo. 454, 210 P. 985 (1949), the court observed that the doctrine is applicable when the prior action "involved an identity of the subject matter; identity of cause of action; identity of parties to the action; and identity of capacity in the parties for whom or against whom the claim is made." *Rael,* 832 P.2d at 1013. The court concluded that the subject matter and cause of action components of the *Newby* standard were satisfied and that the capacity of the parties was not at issue. With respect to the requirement of identity of parties, the court described the petitioners' position as follows:

> [Petitioners] argue that they were not named, served, or in privity with the parties to the previous actions, and therefore, they are not barred from litigating the present claim.

*Rael,* 832 P.2d at 1014. Relying on *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973); *Green v. Chaffee Ditch Co.,* 150 Colo. 91, 371 P.2d 775 (1962); and *Brian v. Valley View Cattle Ranch, Inc.,* 35 Colo.App. 428, 535 P.2d 237 (1975), the court of appeals held that the petitioners' claims are based on their status as successors in interest to the defendants in the 1960 Torrens action and that, therefore, the decree entered in that action is binding on the petitioners as parties in privity with those defendants. *Rael,* 832 P.2d at 1014.

Because it deemed its resolution of the res judicata issue dispositive, the court of appeals did not address any of the other issues raised by the petitioners in their appeal. The court of appeals also affirmed the trial court's judgment denying Taylor's request for attorney fees.

We granted petitioners' application for certiorari on the following two issues: whether adequate notice was provided in the 1960 Torrens action and whether the court of appeals erred by determining the question of res judicata without first addressing the question of adequate notice. We also granted Taylor's cross-petition for certiorari review of the trial court's denial of Taylor's request for attorney fees.

### III

Our initial inquiry focuses on the propriety of the court of appeals' determination of the applicability of the doctrine of res judicata to the circumstances of this case without first considering the petitioners' due process challenge to the adequacy of notice in the 1960 Torrens action. The petitioners in essence argue that if, as they contend, notice publication in the 1960 Torrens action was constitutionally defective, the decree entered therein is void as to them and the doctrine of res judicata is inapplicable to them. Although Taylor's brief filed before this court does not address this issue, amicus Land Title Association of Colorado argues that the court of appeals did address the question of notice.

As we previously noted, in its opinion, the court of appeals does describe the petitioners' contention that the 1960 Torrens action decree is void because the publication notice procedures adopted by Taylor violated due process standards. The court also notes that this argument is germane to one prong of the res judicata test: the question of the identity of parties or their privies. However, the court then concludes that because the petitioners' claims were based on their status as successors in interest to the Torrens action defendants, the requirement of identity of parties was satisfied.

This analysis does not directly address the petitioners' argument that publication notice

was constitutionally inadequate and the 1960 Torrens action decree is therefore void as to their predecessors in interest and as to them. If the petitioners prevail on this issue, the doctrine of res judicata cannot bar their claims because neither they nor their predecessors in interest can be deemed parties to the 1960 Torrens action. Thus determination of the applicability of the doctrine of res judicata in this case depends on a determination of the due process challenge to the sufficiency of the publication notice in the 1960 Torrens action. Assuming, *arguendo,* that the court of appeals did determine, *sub silentio,* that the publication notice adopted in the 1960 Torrens action did not violate due process requirements, we conclude that the record is inadequate to permit such determination in view of the standards applicable thereto.

### IV

While the parties and the amici have advanced vigorous arguments respecting the authenticity and scope of the usufructuary rights claimed by the petitioners, those issues are not before us. Taylor asserts that any such rights were extinguished by the decree issued in the 1960 Torrens action and that the petitioners' claims are barred by the doctrine of res judicata. The petitioners argue that the decree issued in the 1960 Torrens action is void and therefore not dispositive of their claims because the notice publication procedure adopted by Taylor in that action deprived them of due process of law.[15] The validity of that decree is thus central to the parties' arguments here.

### A

The Torrens Act, originally enacted in 1903,[16] is similar to statutes incorporating systems of title registration adopted during the late nineteenth and early twentieth centuries in various other states.[17] These statutes were modeled after a South Australian title registration system devised in 1858 by Sir Robert Torrens to simplify the process of conveyancing of land titles to patented land. *See* Richard W. Laugesen, *The Torrens Title System in Colorado,* 39 *Dicta* 40 (1962). Similar land registration systems were developed and implemented in Europe and the British Isles during the nineteenth century. *See* Theodore Sheldon, *Land Registration in Illinois,* 112–14 (1901). All of these acts seek to enhance certainty of titles by establishing mechanisms to resolve all adverse claims to real property in one proceeding. *See, e.g., Sterling National Bank v. Fischer,* 75 Colo. 371, 373, 226 P. 146, 147 (1924) (purpose of Act was to "escape from the old rules governing the transfer of real estate"); *Reed v. Carlson,* 95 N.W. 303, 303–304 (Minn. 1903) (the "Legislature sought to attain in the transfer of lands a more reliable certainty and confidence than had previously been known, so that a purchaser of real estate could be assured by the last registered transfer that the title was in the apparent record owner."). *See also* Herbert T. Tiffany, *The Law of Real Property,* § 1314 at 109–110 (3d ed. 1939 & 1994 Supp.); Introduction to William F. Beers, Jr., *The Torrens System of Realty Titles* (1907). In contrast to other recording systems, the Torrens system is based on the principle that once title to land is registered pursuant to the statutory procedures and a certificate is issued by the court, subsequent good faith purchasers for value may ascertain all matters relating to the validity of the title from the certificate alone. Richard R. Powell & Patrick J. Rohan, *The Law of Real Property,* Vol. 7, ¶ 908[2], 83–4–

---

15. The petitioners' arguments at times appear self-contradictory. All of the petitioners assert rights traceable to the original beneficiaries of the Beaubien Grant. However, the relationship of the petitioners to various categories of persons whose property rights were affected by the 1960 Torrens action is uncertain. The petitioners at one point indicate that some of them or their predecessors in interest were named defendants in the 1960 Torrens action, although the trial court found to the contrary. However, the petitioners also suggest that they or their predeces-

sors in interest were improperly deemed unknown parties in that action.

16. Land Titles Registration, ch. 139, §§ 1–99, 1903 Colo.Sess.Laws 311–52.

17. William F. Beers, Jr., Preface to *The Torrens System of Realty Titles* (1907). According to this author, California, Illinois, Massachusetts, Minnesota, Oregon, and the Territory of Hawaii adopted such legislation during this period. *Id.* at iii–iv.

5 (1993 & 1994 Supp.). This system is intended to eliminate the need to search records in a recorder's office to determine the status of a title, as required under traditional recording systems. *Id.* In addition, Torrens system legislation typically contains some form of indemnification provision under which registrants pay a fee into a fund from which persons whose interests are wrongfully affected by the registration of the land may seek compensation. *Id.* at ¶ 909[10] 83–36.

The Torrens Act reflects this pattern. An applicant seeking to register title to patented property under the Torrens Act must file an application for such registration together with an abstract of title with the district court of the county in which the land is located. §§ 38–36–108, 116, 16A C.R.S. (1982).[18] The content of the application is prescribed in pertinent part as follows:

The application shall be in writing and shall be signed and verified by the oath of the applicant or the person acting in his behalf. It shall set forth substantially:

. . . .

(e) The names of all persons or parties who appear of record to have any title, claim, estate, lien, or interest in the lands described in the application for registration;

(f) Whether the land is occupied or unoccupied, and if occupied by any other person than the applicant, the name and post-office address of each occupant and what estate or interest he has or claims in the land;

(g) Whether the land is subject to any lien or encumbrance, and, if any, the nature and amount of the same, and if recorded, the book and page of record, and the name and post-office address of each holder thereof;

(h) Whether any other person has any estate or claims any interest in the land, in law or equity, in possession, remainder, reversion, or expectancy, and, if any, the name and post-office address of every such person and the nature of his estate or claim;

(i) In case it is desired to settle or establish boundary lines, the names and post-office addresses of all the owners of the adjoining lands that may be affected thereby, so far as the applicant is able upon diligent inquiry to ascertain the same;

. . . .

(k) When the place of residence of any person whose residence is required to be given is unknown, it may be so stated if the applicant also states that upon diligent inquiry he has been unable to ascertain the same.

§ 38–36–104, 16A C.R.S. (1982).

Immediately after the filing of the abstract of title, the court is required to appoint an examiner of titles, whose duties are described as follows:

[The examiner] shall proceed to examine into the title and into the truth of the matters set forth in the application, and particularly whether the land is occupied; the nature of the occupation if occupied, and by what right, and, also as to all judgments against the applicant or those through whom he claims title, which may be a lien upon the lands described in the application. He shall search the records and investigate all the facts brought to his notice, and file in the case a report thereon, including a certificate of his opinion upon the title.

§ 38–36–118, 16A C.R.S. (1982). If the examiner's report is favorable to the applicant's claim of title, the clerk of the court, upon the filing of the report, must issue a summons. § 38–36–119, 16A C.R.S. (1982). Section 38–36–120 defines the parties to be included in the summons as follows:

**Parties plaintiff and defendant—unknown claimants.** The applicant shall be known in the summons as the plaintiff. All persons named in the application or found by the report of the examiner as being in possession of the premises or as having of record any lien, encumbrance, right, title, or interest in the land, and all

18. The applicant must also file a certified copy of the application with the county clerk and recorder of the county in which the land or a major portion thereof is located. § 38–36–117, 16A C.R.S. (1982).

other persons designated as follows: "All other persons or parties unknown claiming any right, title, estate, lien, or interest in, to, or upon the real estate described in the application herein", shall be defendants. § 38–36–120, 16A C.R.S. (1982). Section 38–36–121 describes the content and manner of service of the summons as follows:

> The summons shall be directed to the defendants and require them to appear and answer the application within twenty days after the service of the summons, exclusive of the day of service. *The summons shall be served as is provided for the service of summons in civil actions in the district court in this state, except as otherwise provided in this article.* The summons shall be served upon nonresident defendants and upon "all such unknown persons or parties", defendant, by publishing said summons in a newspaper of general circulation printed and published in the county where the application is filed, once in each week for three consecutive weeks, and such service by publication shall be deemed complete at the end of the twenty-first day from and including the first publication. If any named defendant assents in writing to the registration as prayed for, which assent shall be endorsed upon the application or filed therewith and be duly witnessed and acknowledged, then in all such cases no service of summons upon said defendant shall be necessary.

§ 38–36–121, 16A C.R.S. (1982) (emphasis added).

Section 38–36–122 of the Torrens Act provides that the clerk of the court shall mail copies of the published notice to defendants who are non-residents of Colorado whose addresses are known or stated in the application and who have not entered appearances and are not personally served with summons. The Torrens Act also provides for additional service, as follows:

> Other or further notice of the application for registration may be given in such manner and to such persons as the court or

any judge thereof may direct. The summons shall be served at the expense of the applicant, and proof of the service thereof shall be made as proof of service is now made in other civil actions.

§ 38–36–122, 16A C.R.S. (1982).

Any person claiming an interest, whether named in the summons or not, may appear and file an answer within specified time periods. § 38–36–125, 16A C.R.S. (1982).[19] If no answer is filed, the court may issue a decree confirming the applicant's title and ordering registration thereof, the effect of which decree is described as follows:

> By the description in the summons, "all other persons unknown, claiming any right, title, estate, lien, or interest in, to, or upon the real estate described in the application herein", all the world are made parties defendant and shall be concluded by the default, order, and decree.

§ 38–36–126, 16A C.R.S. (1982).

If an answer is filed, the court must conduct a hearing. § 38–36–127, 16A C.R.S. (1982 & 1993 Supp.). However, in such circumstances the court shall first enter a default and order against all persons who did not file an answer. *Id.* Upon the conclusion of the hearing, the court shall enter a decree of confirmation of title and registration if it determines the applicant has title proper for registration. § 38–36–130, 16A C.R.S. (1982). The effect of such a decree is established by section 38–36–130 as follows:

> Every decree of registration shall bind the land and quiet the title thereto, except as otherwise provided in this article, and shall be forever binding and conclusive upon on all persons, whether mentioned by name in the application or included in "all other persons or parties unknown claiming any right, title, estate, lien, or interest in, to, or upon the real estate described in the application herein", and such decree shall not be opened by reason of the absence, infancy, or other disability of any person affected thereby, nor by any proceeding at law or in equity for reversing judgments or

**19.** The Act also provides for the protection of the interests of minor children and those not yet born, through the appointment of a guardian ad litem "for minors and other persons under dis-

ability and for all other persons not in being who appear to have an interest in the land." § 38–36–124, 16A C.R.S. (1982). *See Gerbig v. Spelts,* 89 Colo. 201, 205, 300 P. 606, 608 (1931).

decrees, except as especially provided in section 38–36–131. An appeal may be taken as provided by law and the Colorado appellate rules within the same time and upon like notice, terms, and conditions as are provided for the taking of appeals from the district court to the appellate court in civil actions.

§ 38–36–130, 16A C.R.S. (1982). Section 38–36–131(1) of the Torrens Act provides that any person having an interest in the land who was not actually served with process or notified of the application may file an answer to the application within ninety days after the entry of such decree, and not afterwards. Section 38–36–131(2) authorizes persons aggrieved by a decree to file a tort action and to file an action for indemnity pursuant to section 38–36–187. Section 38–36–186 establishes an assurance fund in the event of indemnity claims. Section 38–36–132 limits collateral attacks on decrees as follows:

> No person shall commence any proceeding for the recovery of lands or any interest, right, lien, or demand therein or upon the same adverse to the title or interest as found or decreed in the decree of registration unless within ninety days after the entry of the order or decree. This section shall be construed as giving such right of action to such person only as shall not, because of some irregularity, insufficiency, or for some other cause, be bound and concluded by such order or decree.

§ 38–36–132, 16A C.R.S (1982). Claims against the assurance fund must in general be made within six years of the time the right to bring such action first accrues. § 38–36–190, 16A C.R.S. (1982).

The foregoing synopsis demonstrates the significance of the notice requirements of the Torrens Act. A basic distinction is drawn between known and unknown persons asserting interests in the affected real property. The former class must be named as defendants and served personally pursuant to applicable rules of civil procedure. The latter class may be served by publication. The United States Supreme Court and this court have recognized that the constitutional guarantees of due process of law provide minimum standards for determining whether in particular in rem proceedings publication notice is sufficient to deprive a person of an alleged property right. The initial question posed by the petitioners in this case is whether Taylor satisfied those constitutional standards in the 1960 Torrens action.

## V

The petitioners argue that Taylor's failure to comply with the then applicable provisions of Rule 4(h), C.R.S.1953,[20] renders the decree entered in the 1960 Torrens action void.[21] They also argue that their names or the names of their predecessor in interest were or should have been known to Taylor at the time he filed his application. We reject the former argument. With respect to the latter argument, we conclude that disputes of material fact remain for resolution at the trial level before the issue can be resolved.

## A

The Colorado Rules of Civil Procedure apply to all civil actions in law or equity filed in district court "except as stated in Rule 81." C.R.C.P. 1(a) Rule 81 provides that the

**20.** Our references to Rules 1, 4, and 81 in the opinion are references to the Rules of Civil Procedure as they were formulated in 1960, when Taylor filed his 1960 Torrens action. The relevant provisions of those earlier rules are substantially similar to their counterparts in our current Colorado Rules of Civil Procedure.

The parties do not suggest that the question of the adequacy of the notice publication in the 1960 Torrens action should be answered· by reference to Rule 4 of the Federal Rules of Civil Procedure. *Compare Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1945), and

*Hanna v. Plummer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), *with Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Ragan v. Merchants Transfer & Warehouse Co., Inc.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); *and Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980).

**21.** It is not clear whether some of the named petitioners premise their claims on asserted direct personal interests in Mountain Tract land or whether all of the named petitioners premise their claims on interests owned by their predecessors in interest.

rules of civil procedure do not apply to special statutory proceedings "insofar as they are inconsistent or in conflict with the procedure and practice provided by the applicable statute." C.R.C.P. 81. Rule 4(h) establishes the procedure for service by publication on unknown persons, as follows:

> (h) **Publication.** The party desiring service of process by publication shall file a motion verified by the oath of such party or of some one in his behalf for an order of publication. It shall state the facts authorizing such service, and shall show the efforts, if any, that have been made to obtain personal service within this state and shall give the address, or last known address, of each person to be served or shall state that his address and last known address are unknown. The court shall hear the motion ex parte and, if satisfied that due diligence has been used to obtain personal service within this state or that efforts to obtain the same would have been to no avail, shall order publication of the process in a newspaper published in the county in which the action is pending. Such publication shall be made for four weeks. Within 15 days after the order the clerk shall mail a copy of the process to each person whose address or last known address has been stated in the motion. Service shall be complete on the day of the last publication. If no newspaper be published in the county, the court shall designate one in some adjoining county.

■ A party in a civil action filed in a Colorado district court who wishes to serve unknown persons by publication must file a verified motion with the court alleging sufficient facts to establish that the party used "due diligence" to obtain personal service in Colorado or that efforts to obtain such service "would have been to no avail." *Id.* Publication notice is available only upon a court order, subsequent to judicial examination of the motion. In the absence of a verified motion and court review thereof, service by publication on unnamed parties is not possible under C.R.C.P. 4(h).

An applicant in a Torrens Act proceeding must submit a verified application containing specific information, including names and addresses. of various categories of potential defendants. § 38–36–104, 16A C.R.S. (1982). A court-appointed examiner of titles must assess the truth of the averments contained in the application, determine whether the land is occupied, search the records, investigate facts brought to the examiner's attention, and file with the clerk of the court a report that includes a certificate of opinion upon the title. to the land. § 38–36–118, 16A C.R.S. (1982). Ultimately, summons is issued by the clerk of the court, by order of the court. § 38–36–119, 16A C.R.S. (1982). The Torrens Act provides that service on non-residents and unknown defendants shall be accomplished through publication of the summons for three weeks. § 38–36–121, 16A C.R.S. (1982).

■ It is readily apparent that the Torrens Act scheme for identifying persons to be served by publication notice differs from the comparable requirements of C.R.C.P. 4(h). The Torrens Act does not require the filing of a motion specifying what steps the applicant took to identify persons with interests in the subject property. Rule 4(h) requires the filing of such motion. In the Torrens Act proceeding an examiner reviews the application to determine the truth of the information provided by the applicant. Rule 4(h) requires the court to review a party's motion for publication notice on the basis of a due diligence standard. The Torrens Act requires personal service only for those persons named in the application and other persons named by the examiner. Publication notice pursuant to Rule 4(h) must continue for four consecutive weeks; the comparable Torrens Act provision specifies a period of only three consecutive weeks.[22] In view of these differences, we conclude that, pursuant to C.R.C.P. 81, the provisions of the Torrens Act govern service of process in this case. *See Petition of Brainerd Nat'l Bank,* 383 N.W.2d 284, 286 (Minn.1986) (rules of civil procedure do not apply to Torrens proceedings if the rules are inconsistent or in conflict with the Act's provisions); *Dewey v. Kimball, et al. Same v. National Bond & Surety,* 96

---

22. The trial court in the 1960 Torrens action ordered publication for six consecutive weeks.

N.W. 704, 705 (Minn.1903) (provisions of Torrens Act are exclusive and provide the mode and manner of service upon non-residents and unknown defendants).

### B

■ The petitioners also assert that service by publication rather than by personal service on them or their predecessors in interest in the 1960 Torrens action was constitutionally deficient and renders the decree void. While the Torrens Act is designed to eliminate attacks on decrees of confirmation, challenges to the efficacy of such decrees based on alleged constitutional deficiencies of notice are not foreclosed. *See Petition of Brainerd Nat'l Bank,* 383 N.W.2d 284, 287 n. 2 (Minn.1986) (citing previous cases where Torrens decrees were set aside for constitutional defects); *Riley v. Pearson,* 139 N.W. 361, 366 (Minn.1913) (if claimants known to applicant or named by examiner are not named as parties, the decree is not binding on such claimants and may be attacked collaterally; a contrary conclusion would raise constitutional concerns). *See generally* Richard R. Powell & Patrick J. Rohan, *The Law of Real Property* Vol. 7, ¶ 909[4], 83–24 (1993 & 1994 Supp.).

■ Such a challenge, if successful, does not render the confirmation decree void for all purposes, contrary to the petitioners' suggestion. Only a person denied adequate notice may attempt to establish that person's interest in the subject property. *Riley,* 139 N.W. at 366. *See Gerbig v. Spelts,* 89 Colo. 201, 206, 300 P. 606, 608 (1931).

The contours of any inquiry into the constitutional sufficiency of service by publication in civil actions affecting property rights are shaped by the decision of the United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).[23] In *Mullane,* the Court addressed the question of whether the beneficiaries of certain constituent entities comprising a common trust fund were entitled to individual notice of periodic accounting which, if not challenged, became binding and conclusive on all persons or entities having an interest in the common fund. With regard to this question, the Court stated as follows: .

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... "The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." *American Land Co. v. Zeiss,* 219 U.S. 47, 67 [31 S.Ct. 200, 207, 55 L.Ed. 82] [1911]....

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any

---

**23.** Although *Mullane* and its progeny are generally recognized as articulating the current due process standards for determining the efficacy of publication notice in civil actions involving property interests, the Court had previously recognized that due process principles require plaintiffs in quiet title actions to make diligent efforts to ensure adequate notice to all potential defendants. In *American Land Co. v. Zeiss,* 219 U.S. 47, 66, 31 S.Ct. 200, 206–07, 55 L.Ed. 82 (1911) the Court reviewed the constitutionality of a 1906 California statute enacted in response to the "conditions caused in San Francisco by the great calamity of earthquake and fire" to "provide for the establishment and quieting of title to real property in case of the loss or destruction of public records." *Id.* at 48–49, 31 S.Ct. at 200–01. The statute, which incorporated features of

the Torrens registration system, had previously been held constitutional by the California Supreme Court in *Title Document Restoration Co. v. Kerrigan,* 150 Cal. 289, 88 P. 356 (1906). The Supreme Court held that the statute satisfied due process criteria for notice because it imposed a "duty [on the person seeking to quiet title] to make diligent inquiry to ascertain the names of all claimants," which provision demonstrated "the careful purpose of the legislature to provide every reasonable safeguard for the protection of the rights of the unknown claimants and to give such notice as under the circumstances would be reasonably likely to bring the fact of the pendency and the purpose of the proceeding to the attention of those interested." *American Land Co.,* 219 U.S. at 66, 31 S.Ct. at 207.

chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected ... or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

It would be idle to pretend that publication alone as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

*Mullane,* 339 U.S. at 314–15, 70 S.Ct. at 658 (citations omitted). Applying this broad standard to the circumstances before it, the Supreme Court concluded that service by publication was sufficient notice to persons "missing or unknown .... whose interests or whereabouts could not with due diligence be ascertained." *Id.* at 317, 70 S.Ct. at 659. However, with respect to "known present beneficiaries of known place of residence," the court concluded as follows:

> Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less than likely than the mails to apprise them of its pendency.

*Id.* at 318, 70 S.Ct. at 659.

■ *Mullane* thus established a dual standard for evaluating the adequacy of publication notice: whether under all the circumstances the means selected was reasonably calculated to reach interested parties and

whether the party giving notice had exercised due diligence to ascertain the identities of interested parties.

In *Walker v. Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), the Court applied the *Mullane* criteria to require personal notice to property owners affected by a city's widening of a street whose names and addresses were contained in city records. In *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), the Court held that notice by publication and by posting on trees in the general vicinity of property owned by a landowner who claimed usufructuary rights in a stream and who resided twenty-five miles upstream from a new municipal diversion project was inadequate for due process purposes with respect to that landowner. In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court held that mortgagees of property sold at a tax sale without their knowledge were entitled to personal notice.

Most recently, in *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), the Court considered the constitutional sufficiency of a notice publication provision of an Oklahoma nonclaim statute. Citing extensively to *Mullane,* the Court held that publication notice to reasonably ascertainable creditors who might be unaware of a debtor's death violated due process standards. While acknowledging the state's interest in quickly terminating probate proceedings, the Court concluded that requiring notice by mail to all known or reasonably ascertainable creditors of the decedent did not conflict with this purpose. *Tulsa,* 485 U.S. at 489–90, 108 S.Ct. at 1347–48. The Court remanded the case for a determination of whether the plaintiff's identity as a creditor was reasonably ascertainable. *Id.* at 491, 108 S.Ct. at 1348.

■ This court has recognized that in quiet title actions diligent inquiry and notice reasonably calculated to apprise interested parties of a pending proceeding affecting

such interests are required.[24] *Weber v. Williams*, 137 Colo. 269, 275–76, 324 P.2d 365, 368 (1958) (quoting *Coppinger v. Coppinger*, 130 Colo. 175, 274 P.2d 328 (1954)); *Bray v. Germain Investment Company*, 105 Colo. 403, 407, 98 P.2d 993, 995 (1940). *See also Federal Farm Mortgage Corp. v. Schmidt*, 109 Colo. 467, 470–71, 126 P.2d 1036, 1038 (1942) (mortgagee's failure to state in affidavit for publication notice filed in foreclosure action the addresses of mortgagors sought to be served or state that such information was unknown to the affiant rendered decree invalid). While these cases required application of the due diligence standard of C.R.C.P. 4(h) in various contexts, they recognize the importance of supplying official notice of pending in rem litigation to persons whose interest in the res will be affected by those proceedings. In *White v. Ainsworth*, 62 Colo. 513, 163 P. 959 (1917), this court upheld the constitutionality of the publication notice provisions of the Torrens Act as applicable to out-of-state residents. In rejecting arguments that such provisions violated the due process rights of such non-Colorado residents and that the confirmation decree was obtained by fraud, we declined to address an argument to the effect that the decree was invalid as to such persons because the applicant's failure to include them as named defendants in the Torrens action constituted actual or constructive fraud. *Id.,* at 520–24, 163 P. at 962–63. In *Mills v. Denver & R.G.R. Co.*, 198 F. 137 (D.Colo. 1912) (injunction suspended and case remanded), 199 F. 988 (8th Cir.1912), *but reaff'd*, 222 F. 481 (8th Cir.1915), the court held that service by publication in a Torrens Act proceeding satisfied due process standards of notice with respect to a railroad company's claim of a right of way over the property. The court noted that at the time the Torrens Act proceedings were commenced "there was nothing of record, or upon the ground, to advise the [applicant] or examiner of titles … that the [railroad company] claimed any interest therein." 198 F. 137 at 141–42. These cases recognize the general rule that Torrens Act applicants have

a duty to exercise reasonable diligence in identifying all reasonably ascertainable persons who claim interests in the property and are thus entitled to personal service.

Other courts upholding the constitutionality of publication notice provisions of Torrens system statutes have acknowledged that applicants must use due diligence to ascertain the identities of interested persons to be served personally in proceedings to register title to property. *See, e.g., Follette v. Pacific Light & Power Corp.*, 189 Cal. 193, 208 P. 295, 298–99 (1927) (statutory provision which imposes on applicants a duty of inquiry as to the names and residences of all persons who may claim an adverse interest and which does not permit applicants to willfully or negligently close their eyes " 'to the means of knowledge and thus secure a decree by publication and posting alone, as against persons whose identity [they] might have learned by the use of due effort,' " satisfies due process); *Robinson v. Kerrigan*, 151 Cal. 40, 90 P. 129, 131 (1907) (statutory provision allowing publication notice to "unknown" persons held constitutional because it requires personal service to all reasonably ascertainable claimants). *See also State v. Guilbert*, 56 Ohio St. 575, 47 N.E. 551 (1897) (Torrens statute that did not require applicant to personally serve all reasonably ascertainable claimants held unconstitutional for lack of due process).

These cases suggest the standard by which to measure the petitioners' due process claims in this case. In Torrens Act proceedings, as in other in rem actions, notice must be reasonably calculated under all relevant circumstances to ensure that interested parties are made aware of the proceedings. In view of the sharp distinction drawn by the Torrens Act with respect to named defendants who must be served personally and unknown persons who may be served by publication, applicants must act with reasonable diligence to ascertain the names of persons who claim an interest in the property subject to the proceedings. The test of reasonable diligence, as established by *Mullane* and its progeny, is an objective test: the

---

24. The rules of civil procedure, including the notice publication provisions of C.R.C.P. 4(h), are applicable in quiet title proceedings.

conduct a reasonably prudent applicant would undertake under all circumstances known or reasonably discoverable by the applicant at the time the application is filed to ensure that interested parties will be identified and served as named defendants.

The structure and language of the Torrens Act supports this conclusion. As previously noted, section 38–36–104 of the Torrens Act prescribes the contents of the verified application. Section 38–36–104(1)(g) requires an applicant to list the names and addresses of all persons who appear of record to have an interest in the subject property. Section 38–36–104(1)(h) requires an applicant to list the names and addresses of any person who claims "any interest in the land, in law or equity, in possession, remainder, reversion, or expectancy." These sections are silent with respect to what efforts an applicant must make to obtain the required information. However, section 38–36–104(1)(i) expressly requires an applicant to make "diligent inquiry" to ascertain the names and addresses of owners of adjoining land if the proceedings include issues relating to the settlement or establishment of property lines. Furthermore, section 38–36–104(1)(k) requires an averment that the applicant has made "diligent inquiry" to ascertain the place of residence of any person whose residence is by the terms of the Torrens Act required to be listed. When construed together, these sections disclose the General Assembly's intent to require applicants to exercise reasonable diligence in ascertaining the names and addresses of persons having any interest in the subject property and therefore required to be listed in the application and personally served. A contrary construction of these statutory provisions would render the Torrens Act constitutionally suspect.[25]

■■■■ In sum, an applicant for a decree to confirm and register title to property pursuant to the Torrens Act must exercise reasonable diligence under all the circumstances to ascertain the names of persons who claim interests in the property subject to the proceeding. The test for determining reasonable diligence is an objective test: that conduct a reasonably prudent applicant would undertake under all circumstances known or reasonably discoverable by the applicant at the time the application is filed to ensure that all interested parties are identified and served as named defendants.[26] The Due Process Clause of the United States Constitution and the Torrens Act as adopted by the General Assembly require no less.[27]

25. Other courts have recognized a requirement of diligent inquiry into the identity of all reasonably ascertainable claimants under their states' Torrens statutes. *See, e.g., Moakley v. Los Angeles Pac. Ry. Co.*, 99 Cal.App. 74, 277 P. 883, 884–85 (1929) (failure to name person in petition whose interest was easily ascertainable from abstract violated statutory notice requirements); *Couey v. Talalah Estates Corp.*, 183 Ga. 442, 188 S.E. 822, 826–28 (1936) (due process required personal service to reasonably ascertainable claimant); *Chicago Title & Trust Co. v. Darley*, 363 Ill. 197, 1 N.E.2d 846, 849 (1936) (under Torrens statute, "a person having or claiming any interest in the land, whose name and address is known or can be ascertained upon diligent inquiry, cannot be made a party as 'all whom it may concern.'"); *Sheaff v. Spindler*, 339 Ill. 540, 171 N.E. 632, 638–39 (1936) (Torrens statute requires individual notice to all claimants whose names can be ascertained through diligent inquiry); *Dewey v. Kimball*, 89 Minn. 454, 95 N.W. 317, 319–20 (1903) (Torrens applicant's disregard of information in title examiner's report constitutes a lack of due diligence and renders decree void as to person named by examiner). *See also Baart v. Martin*, 99 Minn. 197, 108 N.W. 945, 947 (1906) (intentional fraud in failing to name known interested person as defendant renders decree invalid).

26. We recognize that applicants in Torrens proceedings generally need not extend their search for information pertaining to reasonably ascertainable interested parties beyond information discoverable by diligent inquiry into relevant public records. In this case, the petitioners' asserted interests were arguably recorded in the Costilla County records, referred to in Taylor's deed and the Gilpin agreement, referenced in the title examiner's report, and noted in Taylor's own application.

27. Our decision in this case is limited to consideration of whether the notice provided in the 1960 Torrens action was constitutionally sufficient. As we have explained, the provisions authorizing publication notice to "unknown" parties contained in C.R.C.P. 4(h), which provisions require a petitioner in a quiet title proceeding to submit a verified motion stating what efforts have been made to identify all reasonably ascertainable interested persons, were not applicable to the 1960 Torrens action. A petitioner in a quiet title proceeding who complies with the requirement of Rule 4(h) in effect provides the

## C

In this case, the petitioners' complaint initially made claims of denial of due process. Taylor's motion for judgment on the pleadings or for summary judgment asserted that the petitioners' claims against him were barred by the doctrine of res judicata. The petitioners again asserted their due process claims in their response to Taylor's motion. In granting the motion, the trial court did not apply the test enunciated above to determine whether the confirmation decree must be deemed invalid as to some or all of the petitioners because the publication notice was constitutionally ineffective with respect to them. In affirming the trial court's judgment, the court of appeals did not indicate the test it applied in rejecting those claims, assuming that such claims were considered by that court.

In some circumstances this court may apply the appropriate legal standard to the factual circumstances presented by the record and resolve questions of law not addressed or improperly resolved in earlier proceedings. However, the record in this case forecloses this avenue.

As the trial court observed, insofar as Taylor's motion can be deemed a motion for judgment on the pleadings, all allegations of the complaint must be considered true. *See Trinity Broadcasting v. Westminster*, 848 P.2d 916, 925 (Colo.1993). The complaint contains allegations of Taylor's lack of reasonable diligence that are sufficient to overcome any motion for judgment on the pleadings with respect to the constitutional adequacy of the publication notice in the 1960 Torrens action.

To the extent Taylor's motion is deemed a motion for summary judgment, the petitioners' response thereto raised the question of the constitutional adequacy of the publication notice in the 1960 Torrens action. Summary judgment is a drastic remedy and may not be granted if genuine issues of material fact remain for resolution. *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1009 (Colo.1992); *Civil Service Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo. 1991); C.R.C.P. 56(c). The limited record before us discloses numerous issues of disputed fact material to the resolution of the petitioners' due process claim. Whether Taylor's conduct in ascertaining named defendants who were entitled to personal service in the 1960 Torrens action satisfied the requisite standard cannot be determined in the absence of a resolution of such disputed facts. The necessary factual determinations and the application of the appropriate legal principles to those determinations must be made and performed by the trial court.

## VI

Taylor has cross-appealed the denial by the trial court and the court of appeals of his request for attorney fees. Section 13–17–101, 6 C.R.S.1973 (1978 Supp.), authorizes trial courts to award attorney fees against parties who bring or maintain "frivolous or groundless" actions.[28] In *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063 (Colo. 1984), we held that a claim is "frivolous" for purposes of the statute "if the proponent can present no rational argument based on the evidence or law in support of that claim...." *Id.* at 1069. We also held that a claim is

trial court with evidence presumptively establishing that the due diligence standard of notice has been satisfied. Taylor's suggestion that acceptance of the petitioners' contention that they are entitled to an appropriate adjudication of their constitutionally based claim of lack of adequate notice of the 1960 Torrens action will affect the certainty of quiet title decrees entered in state court quiet title actions is thus without foundation. In addition, the burden of proving lack of adequate notice in any challenge to a Torrens decree rests on those persons challenging such notice. Had Taylor certified in the 1960 Torrens action his efforts to identify all reasonably ascertainable persons with identifiable interests in the

Mountain Tract, as he would have been required by Rule 4(h) to do in a quiet title proceeding, this litigation might have been foreclosed by direct application of the doctrine of res judicata.

**28.** As Taylor notes, § 13–17–101, 6 C.R.S.1973 (1978 Supp.), was repealed and reenacted as § 13–17–102, 6A C.R.S. (1987), during the pendency of the trial proceedings. Ch. 107, sec. 2, § 13–17–102, 1984 Colo.Sess.Laws 460. The provisions authorizing awards of attorney fees set forth in § 13–17–102, 6A C.R.S. (1987), are applicable to Taylor's claim for attorney fees on appeal.

"groundless" for purposes of the statute "if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial." *Id.* In this case the trial court concluded that the action filed by the petitioners was neither groundless nor frivolous, observing that there is legal authority to support some of the issues asserted by the petitioners. The court of appeals affirmed the trial court's determination.

Taylor does not directly refer to the standards we articulated in *Isaacs.* He argues that the trial court and the court of appeals erred in failing to analyze certain issues allegedly unsupported by factual or legal authority; that the petitioners have provided no authority to deny Taylor's defenses based on various statutes of limitations; and that the petitioners have litigated time-barred judicially determined issues, which conduct should establish a presumption that the petitioners' claims are frivolous, groundless, and vexatious.

Taylor's arguments are not persuasive. The petitioners' fundamental claim—that the publication notice used in the 1960 Torrens action violated standards of due process of law, rendering the decree invalid as to some or all of their predecessors in interest—is a rational argument supported by authority. We have concluded that the record contains some credible evidence to support that claim, and the petitioners have cited relevant authority to support their arguments. We conclude that the trial court and the court of appeals did not err in holding that the petitioners' claims were neither frivolous nor groundless.

Section 13–17–101, 6A C.R.S. (1987), authorizes courts to award attorney fees when the "bringing . . . of an action, or part thereof . . . is determined to have been substantially frivolous, substantially groundless, or substantially vexatious." We determined in *In re Application of Talco, Ltd.,* 769 P.2d 468, 476–77 (Colo.1989), that the standards of "substantially frivolous" and "substantially

groundless" do not differ materially from their counterparts in section 13–17–101, 6 C.R.S.1973 (1978 Supp.). For the reasons supporting our conclusions that the petitioners' claims are neither frivolous nor groundless, we conclude that their decision to appeal the trial court's adverse judgment was neither substantially frivolous nor substantially groundless. Furthermore, the petitioners' due process challenge to the publication notice procedure utilized in the 1960 Torrens action has never been adjudicated. Given this these circumstances, the petitioners' appeal is not substantially vexatious. We conclude that the court of appeals did not err in affirming the trial court's denial of Taylor's request for attorney fees.

## VII

For the foregoing reasons, the judgment of the court of appeals is affirmed insofar as it upheld the trial court's denial of Taylor's request for attorney fees and reversed insofar as it held the petitioners' claims barred by the doctrine of res judicata. Whether any of the plaintiffs ultimately meet their burden of establishing that the 1960 Torrens decree is not binding as to them can only be decided after a determination of the adequacy of the notice given all reasonably ascertainable persons with identifiable interests in the Mountain Tract property in the 1960 Torrens action. The case is remanded to the court of appeals with directions to conduct further proceedings herein in conformity with this opinion, including consideration of the petitioners' arguments that the trial court erred in concluding that their claims are barred by various statutes of limitations.[29]

Justice VOLLACK dissents, and Chief Justice ROVIRA and Justice ERICKSON join in the dissent.

Justice VOLLACK dissenting:

The majority reverses the summary judgment order and remands to the trial court the issue of whether Jack Taylor, the applicant in the 1960 Torrens action, exercised

---

**29.** Because it affirmed the res judicata prong of the trial court's summary judgment, the court of appeals did not address the petitioners' challenges to the statutes of limitations portions thereof.

reasonable diligence to identify parties who should have been named personally and should have received direct notice of the suit through personal service. I disagree. The notice required by statute, found by the federal district court to have been "met and fulfilled," and affirmed by the Tenth Circuit, satisfied the requirements of due process. I believe that the plaintiffs are barred by res judicata from relitigating the issues of the 1960 case. In my opinion, reopening the question of rights in property determined over thirty years ago is counter to the public policy of this state because it creates uncertainty in the conclusiveness of quiet title decisions and fails to keep title secure and marketable. For these reasons, I dissent.

## I.

I agree with the trial court and the court of appeals that the plaintiffs are barred by res judicata from bringing this suit. Res judicata bars relitigation of a prior action when the two suits share the same subject matter, the same cause of action, and the same parties.[1] *Newby v. Bock*, 120 Colo. 454, 210 P.2d 985 (1949). Because the plaintiffs and their predecessors in interest received adequate notice of the 1960 action, they were parties to it. Their due process rights were not violated and they are now barred by res judicata from relitigating the same issues that were decided in that case over thirty years ago.

The Torrens Act specifically provides for notice to known and unknown potential claimants. Section 38–36–121, 16A C.R.S. (1982), requires that known, resident defendants be personally served with a summons, but that non-resident defendants and "all such unknown persons or parties" be served only by publication. Under the Act, all potential claimants, known and unknown, are made parties to the action. § 38–36–126, 16A C.R.S. (1982).

In the 1960 action, Taylor complied with all of the notice requirements of the Torrens

Act. As the majority notes on page 1214 of its opinion, Taylor's application listed 316 individuals as potential defendants, even though only forty-seven of those names appeared in the abstract of title. The remaining names on the list were those landowners in the county who might claim usufructuary rights to the pasture and timber. Attorneys for potential claimants added an additional 142 names to the list.

In accordance with the Torrens Act, the federal district court appointed a title examiner, who submitted a report to the court. According to his report, the examiner studied the abstract of title and personally investigated the occupancy of the Mountain Tract. He also made inquiry with the county treasurer, the county assessor, and other persons familiar with the land to identify potential defendants to the action. His report indicated that "various persons claim rights to take pasture and wood from The Mountain Tract and an unincorporated organization called the 'Association of Civic Rights[,]' whose members are named in the petition, assert such rights on behalf of themselves and other persons." The report stated that these rights were claimed under a grant made by Carlos Beaubien on May 11, 1863 (the Beaubien grant), which was located in the county land records.[2] The title examiner sought to learn the identities of these "other persons." He contacted the attorney for several defendants in a similar, but unrelated, lawsuit. The attorney tried to obtain the names but was unsuccessful. He also talked with a representative of the Association of Civic Rights, who also could not provide any specific names.

In addition to the parties identified in the petition and by the title examiner, other possible claimants were designated as "persons or parties unknown." These "unknown" defendants were served by publication of the summons for six weeks in a newspaper of general circulation in Costilla County.

---

1. The "same parties" requirement is satisfied if the parties of the second suit are in privity with those of the first. Many of the plaintiffs in the current suit are heirs of the defendants from the 1960 suit. As successors in interest, they are in privity with the earlier parties. *Green v. Chaffee Ditch Co.*, 150 Colo. 91, 371 P.2d 775 (1962).

2. The Beaubien grant is set out in the majority opinion at page 1213.

The named defendants were represented by several attorneys. The court also appointed a guardian ad litem "to represent minors and other persons under disability and all other persons who may have an interest in this proceeding." On July 31, 1962, the federal district court entered default against 369 defendants for failure to answer interrogatories. The case proceeded against the 112 remaining defendants.

The defendants asserted communal rights to use the Mountain Tract for pasture land and to take wood. They based their claims on Spanish or Mexican law; as beneficiaries under the Sangre de Cristo grant, in which the government of Mexico granted land to Narcisco Beaubien; the Treaty of Guadalupe Hidalgo; and on the 1863 document signed by Carlos Beaubien specifically granting usufructuary rights. The federal district court concluded that, as a matter of federal law, the communal rights under the Sangre de Cristo grant and the Treaty of Guadalupe Hidalgo were extinguished when title to the land was confirmed in Beaubien by an act of Congress in 1860. The district court also found that the communal rights established under the Beaubien document applied to the "lands of the Rito Seco," which were not part of the Mountain Tract. Even if the grant of usufructuary rights under the Beaubien document remained valid, therefore, it did not apply to the Mountain Tract. A final decree was entered on October 8, 1965. The decree vested fee simple title to the Mountain Tract in Jack Taylor, free of any claims of all persons, known and unknown. The defendants then appealed the decision to the Tenth Circuit, which affirmed the district court on all issues.

I believe that the plaintiffs in the current action, or their predecessors in interest, received proper notice of the Torrens action and that their due process rights were not violated. They had not recorded any interest in the land and did not occupy it.[3] They were thus included among the group of "unknown" potential claimants and were proper-ly served by publication according to section 38–36–121.

The federal district court, in its "Final Decree of Confirmation of Title and Registration" of 1965, also concluded that notice was properly given to the defendants in the earlier case. The court noted that it had jurisdiction of the parties and the subject matter, and that "the statutory requirements of service, publication and notice have been met and fulfilled." As against a collateral attack on a prior court's jurisdiction, "the judgment of a court of record is supported by the conclusive presumption that jurisdiction was obtained of the party against whom it was pronounced, unless the contrary affirmatively appears from the record." *Hughes v. Webster*, 52 Colo. 475, 122 P. 789 (1912). There is no indication in the record of the 1960 case, insofar as it is before this court, that proper notice of the suit was at issue, nor that notice by publication was not sufficient. The plaintiffs may not relitigate the issue of whether notice was adequate.

## II.

The majority holding requires a Torrens Act plaintiff to exercise "reasonable diligence" to ascertain the identities of otherwise "unknown" claimants, that is, claimants whose names or interests do not appear in the record chain of title and who are not in possession of the land. I do not believe that there is such a duty, nor that the jurisprudence of other states supports one.

The majority cites nine cases from other jurisdictions for the proposition that a Torrens plaintiff, such as Taylor in this case, must exercise reasonable diligence in locating "unknown" potential claimants in order to effect personal service. I disagree with the majority's interpretation of these cases. The cases cited in the majority opinion all involve potential claimants who were not notified, but who were known or should have been known to the plaintiff through the chain of title, through public records, or because they

---

3. It may be argued that the Beaubien grant provides record notice of the plaintiffs' claim of usufructuary rights. However, as the federal district court and the Tenth Circuit found, the potential claimants could not rely on this grant because the rights under it were extinguished by the 1860 act of Congress. Furthermore, those courts also found that the rights given under the Beaubien grant pertained to another land parcel, not the Mountain Tract.

were in possession of the land. Those courts found that the plaintiff should have exercised diligence to find and notify those *known* potential claimants by searching the public records in which they were identified.

In the first case cited by the majority, *Follette v. Pacific Light & Power Corp.*, 189 Cal. 193, 208 P. 295 (1927), the Torrens Act plaintiff granted a right-of-way easement to Pacific Light & Power Corporation. The easement was recorded and the grantee took possession of that portion of the land. The grantor then filed a Torrens action, but did not notify the utility company other than by publication. Subsequent owners of the property relied on the certificate of title issued in the Torrens action. When Follette, a subsequent owner of the property, learned of the easement and sought to eject the utility company, the court ruled that the certificate of title issued to the original grantor was void as against the utility company, because, as an occupant of the land in question, the utility company should have received personal service. The court contrasted the utility company with those who needed only to receive notice by publication: "The provisions of the act as to publication of notice can have application only to those who were not in the possession or occupancy of the premises." *Id.* 208 P. at 299.

The next case relied on by the majority, *Robinson v. Kerrigan*, 151 Cal. 40, 90 P. 129 (1907), involved a general constitutional challenge to California's Torrens Act. The court found constitutional the provisions of the act for personal notice to all the parties shown by the application or by the abstract of title to have an interest in the property, to the spouse of the petitioner, and to the owners of the adjoining land. The court also found that service on all other persons could be by publication. Contrary to the majority's assertion, there is no discussion of personal notice to "reasonably ascertainable" claimants, nor of any duty placed on the plaintiff to directly notify anyone but the specific parties noted above.

The majority next cites *State v. Guilbert*, 56 Ohio St. 575, 47 N.E. 551 (1897), which it claims held that a Torrens statute that did not require an applicant to personally serve all reasonably ascertainable claimants was unconstitutional for lack of due process. *Guilbert* is inapposite because it construed a version of the Torrens Act very different from the one in place in Colorado. Neither does the case impose a duty on the plaintiff to seek out "reasonably ascertainable" claimants. The Ohio statute at issue in that case provided for personal service only upon owners of adjacent land, upon the occupant of the land, and upon holders of easements and inferior estates in the land. All others could be served by publication. The court held the statute unconstitutional because the plaintiff was not required to give personal notice to those whom he knew had adverse claims against the property, including one who held the title in fee simple absolute.[4] That court further buttressed its reasoning by declaring that Torrens actions were actually in personam actions, not in rem actions, and thus would require personal notice.[5]

The majority cites an additional six cases for the proposition that "[o]ther courts have recognized a requirement of diligent inquiry into the identity of all reasonably ascertainable claimants under their states' Torrens statutes." Maj. op. at 1227 n. 25. Each one

---

4. The Ohio legislature later passed a revised version of the Torrens Act. It requires notice to any "person [who] to the knowledge or information of the applicant, or as shown by the records, has or claims any interest in the lands, buildings, or improvements." Ohio Rev.Code Ann. §§ 5309.-09, 5309.12 (Anderson 1989). Unlike Colorado's statute, the Ohio Torrens statute mentions the necessity of diligent inquiry to ascertain potential claimants: "When the names of any persons ... necessary or proper to be made parties defendant to an application, are unknown to the applicant after diligent inquiry and research," those parties are to be named in the petition as "unknown" and notified by publication. Ohio Rev.

Code Ann. § 5309.12 (Anderson 1989). Unlike the Ohio legislature, however, the Colorado legislature chose not to include such language in its Torrens statute.

5. It is, of course, of no import today whether the action is in personam or in rem, after *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

of these cases, however, involved claimants whose interests appeared in county land records, were named in the examiner's abstract, were in possession, or of whose interests the applicant had actual knowledge. They do not support the majority's contention that a Torrens applicant has a duty to search for potential claimants beyond those who have a record interest in the property or those whose interests are known or should be known because of their possession of the land.

In *Moakley v. Los Angeles Pacific Railway Co.*, 99 Cal.App. 74, 277 P. 883 (1929), the Torrens plaintiff did not name or notify a claimant whose easement was recorded and appeared in the abstract of title. The claimant in *Couey v. Talalah Estates Corp.*, 183 Ga. 442, 188 S.E. 822 (1936), was known to the Torrens plaintiff to have an interest in the property, was in possession of the land, and was also an adjoining landowner. The statute required notice based on any of these conditions, but none was given. In *Chicago Title & Trust Co. v. Darley*, 363 Ill. 197, 1 N.E.2d 846 (1936), the claimant was in possession of the land at the time the Torrens action was filed, used the land for farming, and maintained fences on the property, but still received no notice. In *Sheaff v. Spindler*, 339 Ill. 540, 171 N.E. 632 (1930), the Torrens applicant failed to name the fee simple owner of record and the tenant in possession of the property. He admitted that he knew of the ownership and possession when he filed the Torrens action. In contrast to the other cases cited by the majority, this one does mention the necessity of "diligent inquiry." By this phrase, however, the court imposed a duty of diligent inquiry to search the public records for recorded interests in the land. The Torrens plaintiff in *Dewey v. Kimball*, 89 Minn. 454, 95 N.W. 317 (1903), failed to name in her application the owner of the land who was listed in the records of the county auditor and that party's successor in interest, despite the recommendation of the examiner that these parties be named and notified. Although the name of the successor was not in the public records, the court held that the plaintiff would have learned it if she had notified the record owner. Finally, as the majority notes, *Baart v. Martin,* 99 Minn. 197, 108 N.W. 945 (1906), involved intentional fraud when the Torrens plaintiff failed to name and notify the record holder of a mortgage, of whom he was aware.

None of these nine cases imposed a duty on the Torrens applicant to search for a potential claimant beyond public records or beyond inspecting the land to ascertain who was in possession. In all of the cases, the Torrens certificate was later held to be invalid because the plaintiff failed to name and notify a claimant who was listed in public records or was in possession. The majority asserts that courts in other states have imposed a heightened duty of "diligent inquiry into the identity of all reasonably ascertainable claimants." They have not. I do not believe these cases support this claim.

III.

The correct standard to determine whether notice provided satisfies due process is articulated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny. "The means employed [to provide notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Id.* at 315, 70 S.Ct. at 657–58. *Mullane* does not require that the best means of giving notice be employed, only the most reasonable. *Id.* at 317, 70 S.Ct. at 658–59. Under *Mullane*, personal service is not an indispensable element of the right to due process.[6]

---

6. The majority also relies on *American Land Co. v. Zeiss*, 219 U.S. 47, 31 S.Ct. 200, 55 L.Ed. 82 (1911), to support its contention that there is a duty to "make diligent inquiry to ascertain the names of all claimants." That case did not involve the Torrens Act, but rather a similar California law passed a few months after the 1906 San Francisco earthquake and resultant fires that destroyed all public records of land ownership. As the majority correctly notes, the California Supreme Court interpreted the statute to require "diligent inquiry." The actual holding of *Zeiss*, however, tends to refute the majority's position rather than support it. Zeiss, the lessee

*Mullane* involved the question of whether beneficiaries of a trust received adequate notice of the disposition of trust accounts. The state statute only required notice by publication. The *Mullane* court held that publication notice was adequate only for those beneficiaries "whose interests or whereabouts could not with due diligence be ascertained." *Id.* In that case, the trustee was required to provide actual notice to the beneficiaries whose names and addresses were in his records. However, the court also held that publication notice was adequate for "those beneficiaries whose interests ... could be discovered upon investigation, [but] do not in due course of business come to knowledge of the common trustee." *Id.* The court further stated that there was no requirement of "impracticable and extended searches" to locate those beneficiaries whose interests were remote. *Id.* One is not required to undertake "extraordinary efforts to discover the identity and whereabouts of a [claimant] whose identity is not in the public record." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 n. 4, 103 S.Ct. 2706, 2711 n. 4.

Based on *Mullane* and its progeny, I find that Jack Taylor provided adequate notice to potential claimants. He not only complied with the notice requirements of the Torrens statute, but also named and notified 316 parties whose names and interests were not found in the public records. By order of the court, he also named and notified 142 additional potential claimants. The record also

indicates that the title examiner actively sought to identify other potential claimants.

I conclude that Taylor's 1960 action not only satisfied due process standards, but went significantly beyond what due process required. Even if we were to read the statute to impose a requirement of reasonable diligence, I believe that reasonable diligence was exercised.

## IV.

Because the interests of the "unknown" claimants were represented in the 1960 action, their due process rights were not infringed. The record indicates that the court appointed a guardian ad litem to represent the interests of the "unknown" claimants.

Moreover, because the usufructuary rights in question were the same rights shared by all of the potential claimants, the fact that most of the claimants received notice and had an opportunity to participate in the suit was sufficient to protect the interests of those who did not. "[N]otice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every [claimant] are justifiable." *Mullane*, 339 U.S. at 319, 70 S.Ct. at 659–60.

of the property in question, filed an action under the statute and alleged that he was the owner of the land and knew of no other person with a claim on it. However, he made *no* inquiry to ascertain whether any adverse claim existed. In compliance with the statute, notice was published in a local periodical. Zeiss received a certificate of title. The later suit was brought by the actual owners of the property in fee simple. The lower court dismissed their claim because Zeiss had obtained title through the earlier action. After reciting the language requiring "diligent inquiry," the United States Supreme Court held the California statute to be constitutional, *affirmed* the lower court's dismissal, and denied the true owners their title to the property. The actual result of *Zeiss* was that a petitioner under the California statute could obtain title to property even though he made no inquiry beyond publication notice to ascertain whether there were claims against the property.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), cited *Zeiss*, but differently than the majority suggests. *Mullane* quoted *Zeiss* for the proposition that notice should be practical and reasonable, but need not be given to every possible person who could conceivably have a claim:

But if with due regard for the practicalities and peculiarities of the case these conditions [i.e., interested parties are informed of the action and have an opportunity to present their objections] are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."

*Mullane*, 339 U.S. at 314–15, 70 S.Ct. at 657 (quoting *Zeiss*, 219 U.S. at 67, 31 S.Ct. at 207).

The interests of the "unknown" claimants were represented in the 1960 action. As successors in interest to those "unknown" claimants, the current plaintiffs are bound by the results of that earlier decision.

## V.

The plaintiffs' attempt to void the 1960 Torrens action and the majority's acquiescence in their collateral attack results in the application of an incorrect remedy. According to section 38–36–131(1), 16A C.R.S. (1982), parties in the position of the plaintiffs, who claim they should have received actual notice of the Torrens action but did not, may reopen the decree only within ninety days after entry of the decree, and not afterwards. In this case, the final decree was not entered until October 5, 1965. The plaintiffs, or their predecessors in interest, had five years from the original filing to become aware of the Torrens action. Because they did not attack the decree within the statutory ninety days, they are now prohibited from doing so.

Section 38–36–131(2), 16A C.R.S. (1982), provides the appropriate remedy. If, as the plaintiffs claim, Taylor's application in the Torrens action was made with fraudulent intent, their correct remedy is a suit for damages. "Any person aggrieved by such decree in any case may pursue his remedy by suit in the nature of an action of tort against the applicant or any other person for fraud in procuring the decree. . . ." § 38–36–131(2). Reopening the thirty-year-old decree is not the proper remedy. *See White v. Ainsworth,* 62 Colo. 513, 163 P. 959 (1917).

## VI.

The effect of the majority opinion is to reopen a thirty-year-old decision and put into question the ownership of a considerable portion of the land in Costilla County. The plaintiffs' second amended complaint names as defendants not only the estate and heirs of Jack Taylor, but an additional 218 parties and "all unknown persons" who now may have ownership or other interests in the land.

It is the public policy of this state to make title to property *more* secure and market-able, not less. *See* § 38–34–101, 16A C.R.S. (1993 Supp.).

> [A]ll . . . laws concerning or affecting title to real property and every interest therein and all recorded instruments, decrees, and orders of courts of record . . . shall be liberally construed with the end in view of rendering such titles absolute and free from technical defects so that subsequent purchasers . . . may rely on the record title and so that the record title of the party in possession is sustained and not defeated by technical or strict constructions.

*Id.* The majority opinion directly contradicts this legislative prescription by allowing a party, after any period of time, to reopen dispositions of land title. The majority does violence to this state's system of securing title and irreparably harms the marketability of land in this state. The majority opinion reaches not only titles obtained through Torrens actions, but also, by implication, all land ownership determinations made in quiet title actions. The provisions for naming defendants in quiet title actions and providing them notice differ little from similar provisions in the Torrens Act.[7]

The effect of the majority's decision is to create uncertainty in the conclusiveness of land title in this state.

## VII.

The majority holds that summary judgment was inappropriate in this case because a question of fact remained as to whether Taylor exercised reasonable diligence in identifying potential claimants who should have been named parties and should have received notice of the action through service of process. The crux of the issue, as posed by the majority, is whether Taylor's efforts and the notice that he provided was adequate to reach the predecessors in interest of the current plaintiffs. The majority remands this issue to the trial court for a factual determination. This remand is an incorrect disposition of the case. The question of the sufficiency of notice is one of law, not of fact. *Closed Basin Landowners Ass'n v. Rio*

---

7. *See* C.R.C.P. 105, 10(a), 9(a)(2), and 4.

*Grande Water Conservation Dist.*, 734 P.2d 627 (Colo.1987); *Kavanagh v. Hamilton*, 53 Colo. 157, 125 P. 512 (1912) (holding that on collateral attack the jurisdiction of a court of record must be determined by its own record). As such, even if we choose to graft the requirement of applying reasonable diligence in locating unknown claimants onto the Torrens Act, the decision on whether Taylor exercised that reasonable diligence is a question of law for this court, not a question of fact for the trial court.

### VIII.

Because I believe that the plaintiffs are prohibited by res judicata from relitigating the 1960 action, and because notice in that suit was adequate to satisfy due process, I dissent. I also cannot agree that the plaintiffs should be allowed to reopen a thirty-year-old determination of land title. Such a result would introduce chaos and uncertainty in the marketability of land in this state.

I am authorized to say that Chief Justice ROVIRA and Justice ERICKSON join in this dissent.

